**LONE STAR INDUSTRIES, INC., Plaintiff,**

v.

**CHIEFTAIN CEMENT CORP., Lorne Leibel and William Jahn, Defendants.**

**No. 91–CV–609C.**

United States District Court, W.D. New York.

July 9, 1992.

Tofel, Berelson & Saxl, P.C. (Lawrence E. Tofel, of counsel), Buffalo, N.Y., for plaintiff.

Hodgson, Russ, Andrews, Woods & Goodyear (Benjamin M. Zuffranieri, Jr., of counsel), Buffalo, N.Y., for defendants.

CURTIN, District Judge.

Plaintiff Lone Star Industries, Inc. (Lone Star) moves for partial summary judgment against individual defendants Lorne Leibel and William Jahn, the principal officers, stockholders and directors of defendant Chieftain Cement Corp. (Chieftain). Plaintiff seeks to hail the individual defendants into federal court and hold them liable as "guarantors" of Chieftain's indebtedness to plaintiff. Defendants Leibel and Jahn cross-move to dismiss the complaint against them for lack of personal jurisdiction.

## FACTS

The plaintiff, Lone Star Industries, Inc., is a Delaware Corporation with administrative and executive offices in Stamford, Connecticut. Item 1 at 2. Defendant, Chieftain Cement Corp., is an Ontario, Canada, corporation with a business address at 117 Wentworth Court, Brampton, Ontario. Item 6 at 1. Defendants Lorne Leibel and William Jahn are both Canadian citizens and officers, directors and stockholders of defendant Chieftain. Item 1 at 2. From September 1990 through December 1990, plaintiff delivered cement to defendant Chieftain. The orders for cement were placed at plaintiff's New York place of business, and substantially all of the cement was delivered to defendant Chieftain in Buffalo, New York. Item 1 at 2–3.

On January 23, 1991, defendant Leibel executed a personal guaranty to plaintiff indicating that his liability to Lone Star for defendant Chieftain's payment would be "joint and several with the liability of Chieftain." Item 9, Ex. A, Attach. to Complaint. On March 7, 1991, defendant Jahn executed a personal guaranty to plaintiff in which he guaranteed the payment obligations of Chieftain. His guaranty also was "joint and several with the liability of Chieftain." *Id.* The guarantees signed by defendants Leibel and Jahn also provided that they would agree to pay reasonable attorney's fees in the event of any suit or legal proceeding, including those fees incurred by plaintiff. *Id.*

The corporate defendant Chieftain admits that it is subject to the long-arm personal jurisdiction of the State of New York in accordance with New York Civil Practice Law and Rules, Section 302(a)(1). Item 6 at 2. Chieftain also consents to the jurisdiction of the State of New York in a written agreement between the parties.

Plaintiff moves for partial summary judgment against all defendants based upon a breach of contract and breach of personal guarantees. This court, on March 13, 1992, entered an order granting plaintiff partial summary judgment against the corporate defendant. The court entered judgment against defendant Chieftain in the amount of $320,839.57. Item 14 at 2. Defendants Lorne Leibel and William Jahn now file a cross-motion to dismiss the complaint against them on the ground that this court lacks personal jurisdiction.

## DISCUSSION

■ The grounds for the underlying action are that the corporate defendant, Chieftain, failed to pay plaintiff for both contractually agreed upon goods sold and delivered and on account stated. The theory of liability against the two individual defendant officers, stockholders, and directors is that they personally guaranteed Chieftain's debts to Lone Star.

■ The narrow question at issue is whether this court may assert *in personam* jurisdiction over the individual defendants. Personal jurisdiction in this diversity action "is determined by reference to the law of the jurisdiction in which the court sits." *Hoffritz For Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 57 (2d Cir.1985) (citations omitted); *see also Totalplan Corp. of Amer. v. Lure Camera, Ltd.*, 613 F.Supp. 451, 457 (W.D.N.Y.1985). In New York, the long-arm statute is codified at § 302(a) of the New York Civil Practice Law and Rules (NYCPLR), and provides:

[that] a court may exercise personal jurisdiction over any non-domiciliary ... who in person or through an agent:

1. transacts any business within the state or contracts anywhere to supply goods or services in the state;
....

The language, "contracts anywhere to supply goods and services in the state," was added to the statute in 1979. The 1979 amended language resolves that in the event a contracting party fails to perform, the court may look to whether performance would have been made in New York. *See Fashion Tanning Co. Inc. v. Shutzer Industries, Inc.*, 108 A.D.2d 485, 489 N.Y.S.2d 791 (3d Dep't 1985). The amendment provides for jurisdiction where a non-domiciliary enters into a contract to do work in or to send goods into New York, so long as the cause of action arises from the contract. *See Cavalier Label Co., Inc. v. Polytam, Ltd.*, 687 F.Supp. 872, 877 (S.D.N.Y.1988). New York courts that have passed on the sufficiency of a guaranty as the basis for the exercise of personal jurisdiction over the guarantor have held that providing a guaranty comports with the § 302 requirement "to supply goods or services in the state" where the payments are due in New York. *See Chase Manhattan v. National Business Systems*, 766 F.Supp. 203, 205 (S.D.N.Y.1991) (collecting cases).

Although the guarantees in the instant case do not specifically direct payments to be made in New York, the court may look to the underlying agreements of the parties. *See, e.g., Manufacturers Hanover Leasing v. Ace Drilling Co.*, 720 F.Supp. 48, 49 (S.D.N.Y.1989); *Gaines Service Leasing Corp. v. Ashkenazy*, 635 F.Supp. 805 (E.D.N.Y.1986). The first paragraph of the guaranty provides that the individual defendants agreed to pay virtually all of Chieftain's debts owed to Lone Star. Item 9, Ex. A. The individual defendants understood that the underlying payments were to be made pursuant to Lone Star's invoices. In fact, Mr. Leibel wrote to Lone Star in West Nyack, New York, concerning the delinquency of Chieftain's payments months before signing his guaranty of Chieftain's debts. From a review of the correspondence between Mr. Leibel and Warren Rocke of Lone Star's Northeast Operations in West Nyack, New York, it is apparent that Mr. Leibel knew exactly

where his payments were due and where litigation would arise if the payments were not forthcoming. Item 9, Ex. F. Furthermore, at the bottom of each bill of lading, the shipper's address is shown as West Nyack, New York. Thus, the individual guarantors were bound by the expectation that payment would be requested in New York.

Defendants, however, disagree with the line of New York and federal cases which have found jurisdiction. They argue that the most recent New York decision which fails to find *in personam* jurisdiction on the basis of a personal guaranty is controlling. *See First Nat'l Bank and Trust Co. v. Wilson*, 171 A.D.2d 616, 567 N.Y.S.2d 468 (1st Dep't 1991). However, the facts of *Wilson* are distinguishable from those in this case.

The defendant in *Wilson* was successful in opposing personal jurisdiction mainly because of the New York appellate court's minimum contacts analysis. The Third Department could not find sufficient contacts on which to subject the defendant to personal jurisdiction. *See Wilson*, 567 N.Y.S.2d at 469–70. In *Wilson*, the basis of the lawsuit and the focus of the jurisdictional inquiry involved only the defendant's limited guarantee of an underlying negotiable investor promissory note. In connection with the limited guaranty, the defendant never communicated by phone or in person with representatives of the plaintiff in New York. The defendant also did not possess any degree of control over the debtor corporation's activities. In short, the defendant's mere promise in some undefined limited guaranty to a New York corporation to make good if a corporation of another state defaulted on its debt did not amount to a voluntary election on defendant's part to invoke the benefits and protections of the laws of New York. *Wilson*, 567 N.Y.S.2d at 469. Defendants' reliance on *Waldorf Associates, Inc. v. Neville*, 141 Misc.2d 150, 533 N.Y.S.2d 182 (Sup.Ct.1988) is similarly misplaced. The court in *Waldorf* found that the California guarantor merely wanted to assist an Ohio corporation, and not to obtain benefits for himself in New York. In each of the cases cited by the instant defendants, the courts were unable to uphold jurisdiction for the lack of additional ties, in addition to the promise to make payments on a guaranty, to bind the individual defendants to New York. *See, e.g.*, Alexander, Supplementary Practice Commentaries, McKinney's Cons. Laws of NY, Book 7B, CPLR C302:13 [1992 Suppl.] at 8–9.

In contrast to *Wilson* and *Waldorf*, the facts of the instant case demonstrate a sufficient constitutional basis for *in personam* jurisdiction. Both individual defendants had other connections with New York; and in making its § 302(a)(1) determination, the court must consider the " 'totality of defendant's activities within the forum.' " *Ace Drilling*, 720 F.Supp. at 50 (quoting *Chemco Int'l Leasing v. Meridian Eng'g*, 590 F.Supp. 539, 540 (S.D.N.Y. 1984)); *see also Longines–Wittnauer Watch Co. v. Barnes & Reinecke, Inc.*, 15 N.Y.2d 443, 261 N.Y.S.2d 8, 18 n. 5, 209 N.E.2d 68, 75 n. 5. (Ct.App.1965). Maintaining jurisdiction on such a basis does not violate the due process clause of the United States Constitution. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). Defendants' contacts with New York are sufficient to meet this standard.

For example, the individual defendants at bar both dealt with plaintiff directly and indirectly through defendant Chieftain in the underlying purchase and sales transactions. Item 9 at 4. Though, sounding in agency, the plaintiff need not establish a formal agency relationship between the individual defendants and Chieftain, the corporate defendant. The plaintiff need only convince the court that Chieftain engaged in purposeful activities in New York in relation to its transactions for the benefit of and with the knowledge and consent of the individual defendants and that the individuals exercised some control over Chieftain in the matter. *See Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 527 N.Y.S.2d 195, 199, 522 N.E.2d 40, 43 (Ct. App.1988) (citations omitted). As Chieftain's principal owners and officers, the individual defendants exerted control over

Chieftain's dealings with Lone Star and were substantially involved with and interested in all of Chieftain's business. Therefore, Messrs. Leibel and Jahn transacted substantial business through purchases of materials, some of which were delivered to Chieftain in Buffalo, New York. Item 9 at 4 and Ex. D.

Further support of the individual defendants' affiliation with New York is found in the underlying sales agreement, signed by defendant Jahn, which contains a New York choice-of-law provision. *See Burger King Corp.*, 471 U.S. at 482, 105 S.Ct. at 2187. Chieftain also made payments in New York; and immediately prior to the signing of the guarantees in question, the individual defendants engaged in a months-long series of communications with Lone Star's New York office concerning a payment schedule. Item 9 at 4 and Ex. F. Although the guarantees do not specify a place of payment, the defendants were aware that all of the underlying then-owing and prospective payments were due in New York.

For all of the reasons stated, defendants enjoyed sufficient due process warning that they "should reasonably anticipate being haled into court there [in New York]." *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). Thus, this court may assert personal jurisdiction over the individual defendants. Accordingly, the motion of the individual defendants to dismiss the complaint as to them for lack of personal jurisdiction must fail. Plaintiff next seeks judgment for (1) that portion of the principal balance owed by Chieftain for which the documents produced by defendants admit liability; (2) finance charges or prejudgment interest on that sum in accordance with Lone Star's regularly prevailing credit terms; and (3) plaintiff's attorney fees, as provided in the personal guarantees of Messrs. Leibel and Jahn.

Previously, this court granted plaintiff partial summary judgment on the question of Chieftain's liability. Specifically, judgment was entered against the corporate defendant Chieftain in the amount of $270,-085.25 plus prejudgment interest of $50,-754.32, for a total of $320,839.57. Item 14. The individual defendants, Messrs. Leibel and Jahn, admit signing personal guarantees for the debts of Chieftain owed to Lone Star. There being no denial of this sum, or any evidence remaining of any disputed material fact or principle of law, partial summary judgment is granted in favor of plaintiff against Messrs. Leibel and Jahn according to their signed guarantees. Fed.R.Civ.P. 56(c). *See generally Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Poller v. Columbia Broadcasting System, Inc.*, 368 U.S. 464, 467, 82 S.Ct. 486, 488, 7 L.Ed.2d 458 (1962). Therefore, by the terms of the personal guarantees and this court's prior order (Item 14), an award of attorneys' fees to plaintiff for the costs of this collection in addition to any further increase in prejudgment interest must be forthcoming.

Accordingly, it is ordered that defendants' motion to dismiss for lack of personal jurisdiction is denied. Partial summary judgment is granted in favor of plaintiff pursuant to the unlimited personal guarantees executed by the individual defendants. Plaintiff is directed to prepare an affidavit setting forth the total amount requested, including any additional prejudgment interest, and the amount of attorneys' fees arising from this collection action against the corporate and individual defendants.

It appears that there still remains some question as to whether or not plaintiff is entitled to recover an additional principal balance in the sum of some $199,302.31, together with interest. If plaintiff believes that it is entitled to this additional amount, explanation shall be set forth in the affidavit to be filed. Defendant shall be given an opportunity to respond.

So ordered.