JACOBS, Circuit Judge:
 

 A New York trade financing firm appeals from a judgment of the United States District Court for the Southern District of New York (Keenan, J.), dismissing for lack of personal jurisdiction its claim against a Jordanian bank. The bank allegedly dishonored its guaranty on a promissory note payable in New York to the financing firm. Since the guaranty is a contract to perform financial services in New York, the breach of which affords jurisdiction under New York’s long-arm statute, and since due process requirements are satisfied on the present record, a prima facie showing of personal jurisdiction has been made. The judgment of the district court is therefore reversed and the case is remanded for further proceedings consistent with this opinion.
 

 I. BACKGROUND
 

 The January 1989 transaction at issue involves a species of trade finance known
 
 *78
 
 as “forfaiting.”
 
 [1]
 
 Our understanding of this subject is drawn from the limited record materials that generically describe the uses, mechanics and conventions of forfait-ing transactions. Forfaiting is an inventive means of facilitating exports to troubled or debt-laden countries. Forfaiting transactions involve the sale of goods or services for promissory notes or bills of exchange. In a forfaiting transaction of the kind at issue here, involving the sale of goods for promissory notes, the forfaiter finances the sale by paying the exporter (usually at a substantial discount) and receives in return the importer's promissory notes. The exporter relinquishes any further claim for payment and has no further role in the transaction other than to deliver the goods or services and guarantee their quality.
 

 A forfaiting transaction involves at least one other essential party: a guarantor bank. In the ordinary course, forfaiters will not finance any trade debts without an unconditional and irrevocable guaranty from a bank or other substantial guarantor. The forfaiter and guarantor usually become involved in the transaction shortly after the commercial terms are worked out between the exporter and the importer. The importer arranges for the bank to guarantee the payment of the note to the forfaiter, at which time the forfaiter becomes fully responsible for payment to the exporter. All burdens of debt collection fall upon the forfaiter, without recourse to the exporter. Upon maturity of the notes, the forfaiter typically presents them to the guarantor for payment.
 

 The guaranty employed in a forfaiting transaction often consists of a two-word endorsement, “per aval,” recorded on the note itself and followed by one or more authorized signatures of the guarantor bank. This endorsement is known as an “aval.”
 
 [2]
 
 As brief and cryptic as the aval may be, the customs and practices of the forfaiting industry make it a fully articulated contractual obligation.
 

 The record informs us that forfaiting institutions control their risks in several ways. First, forfaiters purchase the notes at a substantial discount that reflects the interest cost, the importer’s credit rating and the credit-risk factor for the importer’s country. Second, the notes must be in a fully convertible currency, usually dollars, Swiss francs or Deutschmarks, and the guaranty must be in the currency stipulated on the face of the notes. Third, the notes are usually payable in a commercial center, where there is an expectation of regularity in financial dealings. Fourth, most forfaiters spread risk by buying and selling forfaited trade paper among each other, also without recourse, in a secondary market.
 

 Four initial parties participated in the forfaiting transaction at issue on this appeal: Nissilios Shipping Company (“Nissil-ios”) of Greece, the importer; Welfin S.A. (“Welfin”) of Switzerland, the exporter; plaintiff A.I. Trade Finance, Inc. (“A.I. Trade”) of New York, the forfaiter; and defendant Petra Bank of Jordan, the guarantor. Welfin sold to Nissilios electronics and other component equipment required in shipbuilding. In payment, Nissilios executed six promissory notes payable to the order of Welfin, each in the amount of $2.5 million (the “Welfin Notes” or the “Notes”). It is alleged that Petra Bank affixed its aval, signed by the bank’s then chairman and general manager, Dr. Ahmad
 
 *79
 
 Chalabi, and thereby agreed to guarantee payment of the $15 million of Welfin Notes. A.I. Trade purchased the six Notes for approximately $13.5 million in January 1989. The Welfin Notes specify on their face that they are payable in New York at Irving Trust Company (now The Bank of New York).
 

 At the outset of the transaction, Petra Bank effected delivery of the Welfin Notes to A.I. Trade in New York and instructed A.I. Trade to deposit the net proceeds owing to Welfin in a New York bank account allegedly maintained by Petra Bank for credit to Welfin. A.I. Trade later sold three of the Welfin Notes in the secondary forfaiting market; this dispute therefore involves only the three Welfin Notes that A.I. Trade retained. Petra Bank did not enter New York to negotiate or execute this forfaiting transaction, although a Petra Bank .officer visited New York three months after the bank avalized the Welfin Notes to solicit additional forfaiting business from A.I. Trade and, secondarily, to discuss the concerns of subsequent purchasers of the Notes.
 

 At or around the time of the transaction, Petra Bank became the subject of a Jordanian government investigation into possible fraud and embezzlement by its officers, including Dr. Chalabi, the chairman and general manager who had signed the aval on the Welfin Notes. Dr. Chalabi has left Jordan and is now residing abroad. He denies any illegal or improper activities, asserting that his fugitive status arises from his opposition to Iraqi leader Saddam Hussein.
 

 Petra Bank’s operations have been taken over by a “management committee,” which has announced a moratorium on payment of all outstanding obligations. When the Welfin Notes reached their maturity, Petra Bank did not honor the avals. A.I. Trade sued Petra Bank in a New York district court sitting in diversity to enforce the avals with respect to its three Welfin Notes in the total amount of $7.5 million.
 
 [3]
 
 Petra Bank has since entered liquidation proceedings in Jordan and A.I. Trade has also filed a claim in those proceedings.
 

 Shortly after A.I. Trade commenced this suit, it obtained an order attaching certain New York bank accounts belonging to Petra Bank with a combined balance of approximately $4 million. Petra Bank moved to vacate the attachment and, pursuant to Fed.R.Civ.P. 12(b)(2), moved to dismiss the complaint for lack of personal jurisdiction. By its order dated March 7, 1991, the district court granted Petra Bank’s motion. A.I. Trade’s motion for reargument was denied by an order dated October 22, 1992.
 
 [4]
 
 We granted A.I. Trade’s motion for a stay of the vacatur and for an expedited appeal of the district court’s orders and the judgment entered thereon.
 

 II. DISCUSSION
 

 To survive the motion to dismiss, A.I. Trade was required to make only a prima facie showing that Petra Bank is amenable to personal jurisdiction in New York.
 
 Marine Midland Bank, N.A. v. Miller,
 
 664 F.2d 899, 904 (2d Cir.1981). Eventually personal jurisdiction must be established by a preponderance of the evidence, either at an evidentiary hearing or at trial. But where the issue is addressed on affidavits, all allegations are construed in the light most favorable to the plaintiff and
 
 *80
 
 doubts are resolved in the plaintiff’s favor, notwithstanding a controverting presentation by the moving party.
 
 Hoffritz for Cutlery, Inc. v. Amajac, Ltd.,
 
 763 F.2d 55, 57 (2d Cir.1985);
 
 see Ball v. Metallurgie Hoboken-Overpelt, S.A.,
 
 902 F.2d 194, 196-98 (2d Cir.) (discussing procedure for challenging personal jurisdiction),
 
 cert. denied,
 
 498 U.S. 854, 111 S.Ct. 150, 112 L.Ed.2d 116 (1990).
 

 A. Personal Jurisdiction Under New York Law
 

 Personal jurisdiction over Petra Bank in this diversity action is governed by New York law. The district court rejected each of the three grounds A.I. Trade posited for jurisdiction: (1) transacting business in the state under CPLR 302(a)(1); (2) doing business in the state under CPLR 301; and (3)
 
 quasi in rem
 
 jurisdiction.
 
 See
 
 N.Y.Civ.Prac.L. & R. 301, 302 (McKinney 1990). We conclude that jurisdiction exists for this dispute on a fourth ground, raised on appeal, and hold that Petra Bank is amenable to suit under CPLR 302(a)(1) because it contracted to supply services in the state.
 

 CPLR 302(a)(1) confers jurisdiction over “any non-domiciliary” who “transacts any business within the state or contracts anywhere to supply goods or services in the state,” so'long as the cause of action arises from that contract. A.I. Trade argues that Petra Bank’s guaranty payable in New York is a contract for services in New York within the meaning of CPLR 302(a)(1). Although it appears that the district court was not given the opportunity to consider this argument, we may in our discretion do so. Arguments made on appeal need not be identical to those made below if they involve only questions of law and additional findings of fact are not required.
 
 Vintero Corp. v. Corporación Venezolana de Fomento,
 
 675 F.2d 513, 515 (2d Cir.1982). The parties have fully briefed the existence of “contracts anywhere” jurisdiction, and no new or additional findings are needed to consider it. Thus we may resolve whether Petra Bank’s guaranty of promissory notes payable in New York constitutes a contract to supply services in New York.
 

 In 1970, the New York Court of Appeals declined to assert jurisdiction over a non-domiciliary guarantor under the “transacts any business” language of CPLR 302(a)(1) on the ground that payment of a guaranty in New York was not a transaction of business within the state.
 
 Ferrante Equip. Co. v. Lasker-Goldman Corp.,
 
 26 N.Y.2d 280, 284, 258 N.E.2d 202, 205, 309 N.Y.S.2d 913, 917 (1970). By a 1979 amendment, the jurisdictional language at issue here (the “contracts anywhere” clause) was added to CPLR 302(a)(1), extending long-arm jurisdiction to non-domiciliaries who make contracts to be performed in New York and then fail to perform. Since then, the New York Court of Appeals has not addressed the jurisdictional significance of á payment guaranty under the “contracts anywhere” language. Nor have we yet considered this precise issue.
 

 A majority of lower New York courts have concluded that a non-domiciliary’s guaranty is a contract to supply services in New York that supports the assertion of personal jurisdiction.
 
 See Rielly Co. v. Lisa B. Inc.,
 
 181 A.D.2d 269, 586 N.Y.S.2d 668 (3d Dep’t 1992) (Pennsylvania corporation’s guaranty to be performed in New York alone sufficient to confer jurisdiction);
 
 Fashion Tanning Co. v. Shutzer Indus.,
 
 108 A.D.2d 485, 489 N.Y.S.2d 791 (3d Dep’t 1985) (Massachusetts-defendant’s guarantee of payment in New York fell within scope of CPLR 302(a)(1));
 
 see also Culp & Evans v. White,
 
 106 Misc.2d 755, 435 N.Y.S.2d 248 (N.Y.Sup.Ct.1981) (personal guaranty to secure the performance of a construction contract in New York fell within scope of supplying “services” in New York);
 
 Wong v. Slotkin,
 
 585 N.Y.S.2d 986, 989 (N.Y.Civ.Ct.1992) (Michigan father’s guaranty of son’s performance of lease for New York condominium sufficient to establish jurisdiction).
 
 But see First Nat’l Bank & Trust Co. v. Wilson,
 
 171 A.D.2d 616, 567 N.Y.S.2d 468, 469 (1st Dep’t 1991) (execution in Texas of limited guaranties payable to New York corporation did not confer jurisdiction over guarantor);
 
 Waldorf Assocs. v. Neville,
 
 141
 
 *81
 
 Misc.2d 150, 533 N.Y.S.2d 182, 185 (N.Y.Sup.Ct.1988) (California defendant’s guarantee of payment in New York is not the provision of a service within the state),
 
 aff'd mem.,
 
 155 A.D.2d 283, 547 N.Y.S.2d 556 (1st Dep’t 1989).
 

 Most of the federal district courts in New York that have applied CPLR 302(a)(1) in diversity actions have construed the amended statute to bring a payment guaranty within the compass of performing services in New York.
 
 See Key Bank of New York, N.A. v. Patel,
 
 796 F.Supp. 674 (N.D.N.Y.1992);
 
 Lone Star Indus. v. Chieftain Cement Corp.,
 
 795 F.Supp. 87 (W.D.N.Y.1992);
 
 Chase Manhattan Serv. Corp. v. National Business Sys., Inc.,
 
 766 F.Supp. 203 (S.D.N.Y.1991);
 
 Bankers Trust Co. v. Nordheimer,
 
 746 F.Supp. 363 (S.D.N.Y.1990);
 
 Manufacturers Hanover Leasing Corp. v. Ace Drilling Co.,
 
 720 F.Supp. 48 (S.D.N.Y.1989);
 
 Gaines Serv. Leasing Corp. v. Ashkenazy,
 
 635 F.Supp. 805 (E.D.N.Y.1986);
 
 Chemco Int’l Leasing, Inc. v. Meridian Engineering, Inc.,
 
 590 F.Supp. 539 (S.D.N.Y.1984).
 

 We predict that the New York Court of Appeals would construe a financial guaranty payable in New York as a contract to perform services within the meaning of CPLR 302(a)(1).
 
 Cf. Armada Supply Inc. v. Wright,
 
 858 F.2d 842, 849 (2d Cir.1988) (“contracting to insure property located within a jurisdiction, even if the presence of that property is transitory, subjects a foreign marine-insurer to jurisdiction on suits over such insurance”). Nothing suggests that CPLR 302(a)(1) as amended excludes from its coverage the provision of financial services.
 
 Cf. Chem-co Int’l Leasing,
 
 590 F.Supp. at 543 (no meaningful distinction between guaranteeing performance of a construction contract and guaranteeing payment of money, since “in most cases a judgment cannot be made to require a defendant to specifically perform an obligation, but only to make payment of money damages”). Accordingly, Petra Bank’s aval on a promissory note payable in New York is a contract to provide a service in New York that subjects Petra Bank to New York’s long-arm juris-diction in connection with claims arising out of that contract.
 

 That Petra Bank gave its guaranty in the context of a forfaiting transaction and in the form of an aval raises an additional question: whether an avalizing bank is more closely analogous to a primary obli-gor than to a guarantor. Courts applying 302(a)(1) to the underlying original obligation to pay money and courts applying 302(a)(1) to a guaranty have treated them differently. Some courts have held that a primary obligor’s agreement to designate New York as the place of payment of its debt does not transform the debt into a contract to perform services in New York for jurisdictional purposes.
 
 See Glass v. Harris,
 
 687 F.Supp. 906, 908 (S.D.N.Y. 1988) (Louisiana defendants were not subject to personal jurisdiction in New York suit on promissory note payable in New York);
 
 American Recreation Group, Inc. v. Woznicki,
 
 87 A.D.2d 600, 448 N.Y.S.2d 51, 52 (2d Dep’t 1982) (agreement to pay promissory note in New York is not a contract to supply goods or services in the state).
 
 But see First City Fed. Sav. Bank v. Dennis,
 
 680 F.Supp. 579, 584 (S.D.N.Y. 1988) (note payable in New York conferred jurisdiction where it provided that New York law applied and defendant authorized an agent in New York to help procure loan);
 
 Catalyst Energy Dev. Corp. v. Iron Mountain Mines, Ins.,
 
 630 F.Supp. 1314, 1316 (S.D.N.Y.1986) (note payable in New York conferred jurisdiction where it provided that New York law applied, borrower directed loan proceeds to be paid into borrower’s New York account and borrower made numerous communications to New York).
 

 Here, Petra Bank is acting as a guarantor, not as a primary obligor. Although A.I. Trade sponsored an affidavit of forfait-ing expert D. Ian Guild that describes an aval as placing the guarantor in the place of the original obligor, counsel for Petra Bank conceded at oral argument that the aval does not operate as a novation releasing the primary obligation. A.I. Trade apparently may still pursue the primary obli-gor, Nissilios, for satisfaction of the debt, and is in fact doing so.
 

 
 *82
 
 Petra Bank argues that the place of payment of the Notes was a fortuity lacking jurisdictional significance, because the Notes were made in Jordan by a Greek company, payable to a Swiss company, and because those parties (rather than Petra Bank) designated New York as the place of payment. Petra Bank’s argument mischar-acterizes the nature of forfaiting in general and this forfaiting transaction in particular. From the outset of the negotiations, Nissil-ios and Welfin contemplated involvement of a forfaiter to finance the deal. The evident financial objective of forfaiting is to convert a dubious undertaking into a bankable obligation. One way of doing that is to make the guaranteed obligation payable in a world financial capital. Once A.I. Trade became involved, the success of the transaction — and the payment of Petra Bank’s fee — depended on its terms being acceptable to this New York-based forfaiter. Delivery of the Notes occurred in New York and the net proceeds owing on the Notes were deposited to a New York bank account maintained by Petra Bank for that purpose. The record supports the view that A.I. Trade wanted the payment obligation and the guaranty to be performed in New York. On this record, it cannot be said that payment in New York was an incidental or fortuitous aspect of the transaction.
 

 According to Petra Bank, the “contracts anywhere” language of CPLR 302(a)(1) encompasses a guaranty payable in New York only if the guaranty is payable to a New York resident. Since the record indicates that A.I. Trade, a New York-based firm, was involved in the transaction at an early date and may be regarded as the recipient of the guaranty, we need not consider Petra Bank’s claim that “contracts anywhere” jurisdiction is available only to New York residents.
 

 Petra Bank also contends that payment in New York lacks contractual significance because forfaited notes trade freely in a secondary market (and in fact three of the Welfin Notes were subsequently conveyed to European financial institutions). On balance, the existence of a secondary forfait-ing market supports the assertion of jurisdiction here. Forfaiting is most common for transactions involving marginal firms located in developing countries or in what was the Soviet bloc. The Welfin Notes were made payable in New York in part to make them more marketable, an important feature of any negotiable instrument. In such transactions, the guaranty of payment in a financial capital would seem to be a real comfort to the forfaiter. In any event, this appeal is concerned with the three Welfin Notes retained by A.I. Trade. We do not decide whether jurisdiction over Petra Bank would be appropriate if this action had been brought by a subsequent foreign purchaser of the other three Welfin Notes.
 

 B. Due Process
 

 Having determined that jurisdiction is appropriate under the New York long-arm statute, we must determine whether it offends the Fourteenth Amendment requirement of due process. In the present case, the guaranteeing of the Notes by Petra Bank, including the promise to make payment to a New York-based company in New York, constitutes “ ‘some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and the protection of its laws.’ ”
 
 Burger King Corp. v. Rudzewicz,
 
 471 U.S. 462, 475, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985)
 
 (quoting Hanson v. Denckla,
 
 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958), and upholding Florida law similar to CPLR 302(a)(1) “contracts anywhere” clause).
 

 Petra Bank argues that it did not purposefully avail itself of the privilege of conducting business in New York because payment in New York was an unbargained-for accommodation that Petra Bank extended to A.I. Trade.
 
 Cf. Savin v. Ranier,
 
 898 F.2d 304, 307 (2d Cir.1990) (no jurisdiction where the notes’ “place of payment was an unbargained-for convenience for the benefit of the [creditor]”). However, as we have already concluded, the record indicates that the forfaiter would have good reason to accept an aval only on a note
 
 *83
 
 payable in a financial capital, and the designation of New York as the situs for payment to a New York firm seems to be the opposite of accidental.
 
 Cf. Republic of Argentina v. Weltover Inc.,
 
 — U.S. -, -, 112 S.Ct. 2160, 2169, 119 L.Ed.2d 394 (1992) (“By issuing negotiable debt instruments denominated in U.S. dollars and payable in New York and by appointing a financial agent in that city, [the defendant] ‘purposefully avail[ed] itself of the privilege of conducting activities within the [United States]’ ” (citations omitted)).
 

 Petra Bank urges generally that a Jordanian bank could scarcely have imagined that an aval affixed in Amman, Jordan would bring it into the courts of New York. A.I. Trade submitted Mr. Guild’s uncontested testimony that it is generally understood by the forfaiting community, including avalizing banks, that disputes over trade instruments will be litigated in the forum where the notes are payable.
 
 [5]
 
 Petra Bank asserts that Mr. Guild’s book
 
 Forfaiting
 
 contradicts his testimony; however, the passage cited by Petra Bank merely points out that the parties’ expectations regarding the situs of any lawsuit may be thwarted by a particular court declining to exercise jurisdiction over a particular case.
 

 Petra Bank also suggests that the pen-dency of Jordanian bankruptcy proceedings makes the exercise of jurisdiction unreasonable as a matter of due process. Once minimum contacts have been established, the reasonableness of the exercise of jurisdiction must be determined by an evaluation of several factors including “the burden on the defendant, the interests of the forum State, and the plaintiff’s interest in obtaining relief.”
 
 Asahi Metal Indus. Co. v. Superior Court of Cal.,
 
 480 U.S. 102, 113, 107 S.Ct. 1026, 1033, 94 L.Ed.2d 92 (1987). In
 
 Asahi,
 
 a cross-claim for indemnification between two foreign corporations was all that remained of a personal injury suit brought and settled in California state court. The Supreme Court found that the exercise of personal jurisdiction over the foreign cross-claim defendant was unreasonable “[c]onsidering the international context, the heavy burden on the alien defendant, and the slight interests of the plaintiff and the forum State.”
 
 Id.
 
 at 116, 107 S.Ct. at 1034. We find that New York’s interest in adjudicating a transaction designed to avail the parties, including Petra Bank, of the benefits and protections of its laws, is not on the current record outweighed by the burdens placed on Petra Bank.
 

 For these reasons, the exercise of personal jurisdiction over Petra Bank would not offend “our traditional conception of fair play and substantial justice.”
 
 International Shoe Co. v. Washington,
 
 326 U.S. 310, 320, 66 S.Ct. 154, 160, 90 L.Ed. 95 (1945).
 

 C. International Comity
 

 We next turn to Petra Bank’s argument that the Jordanian proceedings raise concerns of international comity. Petra Bank relies upon cases decided under section 304 of the Bankruptcy Code, 11 U.S.C. § 304 (1988), which permits a foreign representative to commence a case ancillary to a foreign bankruptcy proceeding and, among other things, seek to enjoin any action against the bankrupt or enforcement of any judgment against the bankrupt. The district court did not have occasion to reach this issue since it appears that no application under section 304 was ever made. Nor are we able to resolve this issue based on the record relating to the Jordanian proceedings, consisting as it does entirely of a letter from Petra Bank’s counsel to the district court raising the possibility that the bank’s Liquidation Committee might make an application under section 304 at some future date. Any ruling under section 304 must await an appropriate application to the district court.
 

 D. Validity of Attachment Order
 

 Petra Bank argues that, even if jurisdiction lies, the district court’s vacatur of
 
 *84
 
 the attachment should be affirmed. At the time this action was commenced, A.I. Trade was not properly authorized to do business in New York under section 1312(a) of the Business Corporation Law. N.Y. Bus. Corp. Law § 1312(a) (McKinney 1992). For that reason, Petra Bank contends that A.I. Trade had no authority to commence this action, and that the attachment order was therefore void
 
 ab initio.
 
 The district court did not reach this issue, which is opened by virtue of our ruling on this appeal.
 

 We have held that a state “door closing” statute, such as section 1312(a), “may not impede a diversity action concerning interstate or foreign commerce ... brought in a federal court,”
 
 In re Grand Bahama Petroleum Co. v. Asiatic Petroleum Corp.,
 
 550 F.2d 1320, 1326 (2d Cir.1977), and that “an appropriate remedy for a section 1312 violation is a conditional dismissal or stay of the action pending cure of the violation.”
 
 S & K Sales Co. v. Nike, Inc.,
 
 816 F.2d 843, 853 (2d Cir.1987). A.I. Trade’s subsequent compliance with the statute
 
 cured
 
 — nunc
 
 pro tunc
 
 — the defect in its standing to apply for an order of attachment. On the record before us, section 1312(a) provides no basis' for voiding the attachment. We do not rule on any other aspects of Petra Bank’s motion to vacate the attachment, which were neither reached by the district court nor raised on appeal.
 

 III. CONCLUSION
 

 We hold that A.I. Trade has made a prima facie showing that Petra Bank is subject to personal jurisdiction. We reverse the district court’s dismissal of the complaint and vacatur of the attachment, and remand for further proceedings consistent with this opinion.
 

 [1]
 

 . Forfaiting is a term derived from the French
 
 a forfait,
 
 which means to surrender or relinquish the rights to a thing. Aside from plaintiff’s ongoing disputes concerning the forfaited notes at issue here, we have found no American case law that deals with forfaiting. This form of financing apparently arose in response to the trade crisis created by the installing of communist regimes in Eastern European countries, and is used as well in developing and Third World nations. According to record materials, in past years forfaiting reportedly has accounted for between 0.5 and 1.0% of world trade.
 
 See For-faiting,
 
 Euromoney, Feb. 1988, at Special Supplement 3.
 

 [2]
 

 . The French word
 
 aval
 
 is a commercial term meaning “backing” or "endorsement.” The derivation is disputed. The Oxford English Dictionary says the term “aval” comes from
 
 a val,
 
 meaning “at the bottom,” which is presumably where the guarantee of payment was normally affixed. Webster’s New International Dictionary (2d ed. 1956) says it comes from
 
 á valoir,
 
 meaning "to be accepted as valid.”
 

 [3]
 

 . A.I. Trade has also brought suit on the same three Welfin Notes against Nissilios in Greece and Welfin in Switzerland. With respect to the three Welfin Notes that A.I. Trade sold in the secondary forfaiting market, A.I. Trade has brought suit in New York federal district court against the purchaser of those Notes seeking a declaratory judgment that A.I. Trade is not liable for Petra Bank’s default.
 
 See A.I. Trade Finance, Inc. v. Centro Internationale Hjandelsbank AG,
 
 No. 89 Civ. 7664, 1992 WL 296419, at *1 (S.D.N.Y. Oct. 5, 1992).
 

 [4]
 

 . At some point, A.I. Trade also moved to amend its complaint to state a claim for fraud, apparently to augment its jurisdictional arguments. The motion was denied, a decision A.I. Trade also seeks to reverse. We do not reach the repleading issue because our conclusions herein make it unnecessary for us to do so, and because the record on appeal does not show the basis for the district court’s denial. In light of this opinion, A.I. Trade may or may not elect to renew its motion to amend, and the district court may grant or deny that motion on such grounds as it may then adduce.
 

 [5]
 

 . On reargument, A.I. Trade also submitted an affidavit of Dr. Chalabi, the former chairman and general manager of Petra Bank, endorsing this view. The district court, however, found in its original opinion that Dr. Chalabi "left Jordan with haste,” a dry observation that may explain in part the court's later disregard of Dr. Chala-bi’s affidavit.