**NATIONAL CATHODE CORP., Plaintiff,**

v.

**The MEXUS COMPANY, Transtek International Ltd., and Light Media Group, Defendants.**

No. 93 Civ. 7986 (PKL).

United States District Court, S.D. New York.

June 20, 1994.

J. Barry Cocoziello, Podvey, Sachs, Meanor, Catenacci, Hildner & Cocoziello, Newark, NJ.

C. Glenn Schor, Brooklyn, NY.

### MEMORANDUM ORDER

LEISURE, District Judge:

This is an action for breach of fiduciary duty, breach of contract, tortious interference with contractual relations, tortious interference with prospective economic advantage, conversion, and fraud. The action is brought by National Cathode Corp. ("N.C.C."), a New York corporation, against the Mexus Company ("Mexus"), Transtek International, Ltd. ("Transtek"), and the Light Media Group ("Light Media") (collectively the "defendants"). At the time the action arose, Mexus was headquartered in Pennsylvania and was an affiliate of Transtek and of Light Media. *See* Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss, dated March 28, 1994 ("Plaintiff's Mem."), at Exhibit B. This Court has subject matter jurisdiction based on diversity of citizenship pursuant to 28 U.S.C. § 1332(a)(1).

Defendants now move the Court for an order, pursuant to Fed.R.Civ.P. 12(b)(2), dismissing the action for lack of *in personam* jurisdiction or alternatively for an order, pursuant to Fed.R.Civ.P. 12(b)(3), dismissing the action for improper venue. *See* 28 U.S.C. § 1391(a). For the reasons stated below, the Court denies defendants' motion in its entirety.

### BACKGROUND

In May 1992, Lawrence Silverman and the president of N.C.C., Jimmie Evanisko, attended a lighting industry trade show at the Jacob Javits Convention Center in New York City, New York. Complaint at ¶ 12. *See* Defendants' Memorandum of Law in Support of Motion to Dismiss, dated March 14, 1994 ("Defendants' Mem.") at 3.

Plaintiff contends that Silverman and Luis Lozoya, Transtek's director of design, approached Evanisko at the trade show and stated that Transtek was interested in becoming a distributor and independent sales representative for N.C.C. in Mexico. Complaint at ¶ 12. *See* Affidavit of Jimmie Evanisko, sworn to on March [ ], 1994 ("Evanisko Aff."), at ¶ 5. Shortly after the trade show, Silverman faxed a document to Evanisko listing Lozoya as one of Transtek's executives assigned to Mexus' Mexico City office. Complaint at ¶ 13; Plaintiff's Mem. at Exhibit B. Defendants acknowledge that "[g]eneral discussions were had" at the Javits Center trade show and that Silverman gave Evanisko his business card, but defendants nevertheless contend that "our company did not do business" during the course of this encounter. Affidavit of Lawrence Silverman, sworn to on April 6, 1994 ("Silverman Aff."), at ¶ 2.

Later in May 1992, after Silverman and Evanisko returned to their respective offices in Pennsylvania and New York, Transtek and N.C.C. negotiated and executed a contract providing that Mexus would be N.C.C.'s exclusive representative for N.C.C.'s marketing of its cold cathode lighting in Mexico. The contract was drafted by plaintiff, sent by plaintiff to Transtek on May 21, 1992, signed by Silverman in Pennsylvania on May 22, and signed by Evanisko on May 26. *See* Plaintiff's Mem. at 2–3, Exhibit B; Defendants' Answer and Counterclaims at ¶ 9.[1] Among the communications during the course of the negotiations was a memorandum, dated May 20, 1992, sent by Silverman to plaintiff's New York office by fax, expounding on plaintiff's interest in doing business with defendants. The memorandum reads in part, "We feel that your products meet our critria [sic], and that we will be able to provide you with a good source of business." Plaintiff's Mem. at Exhibit B.[2]

1. It should be noted that all of plaintiff's claims arise out of this contract.

2. The memorandum suggests to this Court that the initial face-to-face discussions between Silverman, Lozoya and Evanisko, at the New York trade show earlier in the month, were instrumental in developing the business relationship between plaintiff and defendants. In a "P.S." at the end of the memorandum, for example, Silverman wrote to Evanisko the following: "The de-

## DISCUSSION

## I. PERSONAL JURISDICTION

## A. PERSONAL JURISDICTION GENERALLY

 The Due Process Clause of the United States Constitution requires "minimum contacts" to be present between the forum state and a defendant before a court may properly exercise personal jurisdiction over a defendant. *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 291, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980). Maintenance of a suit in a plaintiff's home forum must not "offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). To be amenable to suit in a given state, the defendant's contacts with that state must be "such that [defendant] should reasonably anticipate being haled into court there." *World–Wide,* 444 U.S. at 297, 100 S.Ct. at 567. "[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958).

 The burden of establishing jurisdiction over a defendant is on the plaintiff. The plaintiff must merely make a prima facie showing that jurisdiction exists, however, despite contrary allegations by the moving party. *See A.I. Trade Finance, Inc. v. Petra Bank,* 989 F.2d 76, 79 (2d Cir.1993); *Marine Midland Bank, N.A. v. Miller,* 664 F.2d 899, 904 (2d Cir.1981); *Rolls–Royce Motors, Inc. v. Charles Schmitt and Co.,* 657 F.Supp. 1040, 1043 (S.D.N.Y.1987) (Leisure, J.). Giv-

tails of the cold cathode project for the Conrad Hotel in Cabo San Lucas which I mentioned to you will be forwarded to you soon. Sorry for the delay. We have delivered the spec on that project, but Luis did not bring a copy from Mexico (he's in Philadelphia this week), so he is having to do some work to reconstruct it. Thanks for your patience." Plaintiff's Mem. at Exhibit B (parenthesis in original).

en that no evidentiary hearing has been held, plaintiff need not, at this point, prove jurisdiction by a preponderance of the evidence. *Rolls–Royce Motors, Inc.,* 657 F.Supp. at 1043.

■ The Court is to construe all pleadings and affidavits in the light most favorable to the plaintiff, and is to resolve any doubts in the plaintiff's favor. *See A.I. Trade Finance, Inc.,* 989 F.2d at 79, 80 (citing *CutCo Industries, Inc. v. Naughton,* 806 F.2d 361, 365 (2d Cir.1986) and *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.,* 763 F.2d 55, 57 (2d Cir.1985)); *Rolls–Royce Motors, Inc.,* 657 F.Supp. at 1043.

■ Whether this Court has personal jurisdiction over a defendant in a diversity action is determined under New York law. *See Aluminal Industries, Inc. v. Newtown Commercial Associates,* 89 F.R.D. 326, 328 (S.D.N.Y.1980). N.C.C. contends that this Court has jurisdiction over defendants on the basis of N.Y.Civ.Prac.L. & R. § 302(a)(1), as well as on the basis of § 302(a)(3).

■ Under § 302(a)(1), personal jurisdiction is proper where an individual "transacts any business" in New York if the cause of action arises from this transacting of business. *See CutCo Indust., Inc.,* 806 F.2d at 365; *McGowan v. Smith,* 52 N.Y.2d 268, 272, 437 N.Y.S.2d 643, 419 N.E.2d 321 (1981).

Under § 302(a)(3), personal jurisdiction is proper where a defendant commits a tortious act outside of New York causing injury to person or property within New York. *See Mareno v. Rowe,* 910 F.2d 1043, 1046 (2d Cir.1990).

### B. APPLICATION OF N.Y. LONG–ARM STATUTE TO THE INSTANT ACTION

■ This Court finds that it has jurisdiction over the instant action under § 302(a)(1), on the grounds that defendants transacted business in New York and that the causes of action alleged in the complaint arose from this transaction of business. Accordingly, this Court need not and does not reach the issue of whether it has jurisdiction over the instant action pursuant to § 302(a)(3).

■ Under § 302(a)(1), a defendant is found to have transacted business where, as here, an agent for the defendant "physically entered the forum, met with the plaintiff, and discussed business" in an initial contact at a trade show. *Xedit Corp. v. Harvel Industries Corp., Fidelipac,* 456 F.Supp. 725, 728 (S.D.N.Y.1978); *see Maruzen Int'l. Co., Ltd. v. Bridgeport Merchandise, Inc.,* 770 F.Supp. 155, 160 (S.D.N.Y.1991).

A cause of action can be said to arise from transaction of business in New York when, as here, the New York business discussions "were essential to the birth of the contract and fiduciary relationship that have allegedly been breached." *Nee v. HHM Financial Services, Inc.,* 661 F.Supp. 1180, 1185 (S.D.N.Y.1987).

■ The exercise of New York State's long-arm jurisdiction in this case comports with "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). By attending the Javits Center lighting industry trade show in May 1992, defendants have "purposefully avail[ed] [themselves] of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985).

Accordingly, this Court finds—based on the fact that agents of the defendants physically entered New York and engaged in discussions that were essential to formation of the contract at the heart of this action—that defendants have transacted business in New York such that jurisdiction over defendants exists pursuant to § 302(a)(1) and due process requirements.

### II. VENUE

■ Defendants alternatively move the Court to dismiss this action because of improper venue pursuant to Fed.R.Civ.P. 12(b)(3). Section 1391(a) provides that venue is proper in a diversity action if the action is filed in a district where: (1) any of the defendants reside, if all defendants reside in the same state; ⌐(2) a substantial part of the

events or omissions giving rise to the claim occurred; or (3) the defendants are subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought. *See* 28 U.S.C. § 1391(a).

The "substantial part" language was added to § 1391(a) as part of the Judicial Improvements Act of 1990, Pub.L. No. 101–650, Title III, § 311, 104 Stat. 5114 (1990), superseding the former requirement that a diversity action be brought in the district where "the claim arose." 28 U.S.C.S. § 1391(a) (Supp. 1994). Citing both the text of the amendments and the underlying legislative history, the Second Circuit has interpreted the Judicial Improvements Act of 1990 as clarifying Congress' intent that Federal courts may recognize multiple venues as appropriate in a given case. *See Bates v. C & S Adjusters, Inc.,* 980 F.2d 865, 867 (2d Cir.1992) (citing H.R.Rep. No. 734, 101st Cong., 2d Sess. 23, reprinted in 1990 U.S.C.C.A.N. 6802, 6860, 6869); *see also Jaquith v. Newhard,* 1993 WL 127212 (S.D.N.Y.1993) (Leisure, J.); *Schenk v. Red Sage, Inc.,* 1992 WL 111096 (S.D.N.Y.1992) (Leisure, J.); *Generale Bank, New York Branch v. Wassel,* 779 F.Supp. 310 (S.D.N.Y.1991) (Leisure, J.).

In the instant case, this Court finds that since "a substantial part of the events ... giving rise to the claim," 28 U.S.C. § 1391(a)(2), occurred in New York in the form of the trade show discussions between N.C.C. president Evanisko and Transtek representatives Silverman and Lozoya, venue is established under § 1391(a)(2). Indeed, there would have been no contract between N.C.C. and Transtek but for the Javits Center contact. Defendants' representatives attended the trade show in New York City precisely because such a show can play a "substantial part" in the development of business relationships and subsequent contracts.

Accordingly, finding venue to be properly established pursuant to 28 U.S.C. § 1391(a)(2), this Court denies defendants' motion to dismiss for improper venue.

## CONCLUSION

For the above stated reasons, this Court hereby denies in its entirety defendants' mo-

tion to dismiss the complaint for lack of personal jurisdiction or in the alternative for improper venue. All parties to this action are hereby ordered to appear before this Court on July 22, 1994, at 10:30 a.m., for a pre-trial conference in Room 312, United States Courthouse, 40 Centre Street, New York, New York.

**SO ORDERED.**