**GELLER MEDIA MANAGEMENT, INC., Plaintiff,**

v.

**Robert BEAUDREAULT a.k.a. Bob Boudreaux, Defendant.**

**No. 95 Civ. 9164 (PKL).**

United States District Court, S.D. New York.

Jan. 10, 1996.

Daniel R. Robbins, Geller Media Management, Inc., New York City, for Plaintiff.

Richard P. Romeo, New York City, for Defendant.

## OPINION AND ORDER

LEISURE, District Judge:

Before the Court is defendant's motion to dismiss for lack of personal jurisdiction or for improper venue or to transfer pursuant to 28 U.S.C. § 1404 to the United States District Court for the Southern District of Texas. For the reasons stated below, defendant's motion is denied.

## BACKGROUND

This action arises out of the alleged breach of a contract between the parties whereby plaintiff Geller Media Management ("GMM") would act as defendant Robert Beaudreault's ("Beaudreault") manager and represent his interests in the television, cable, radio, lecture, and literary fields. In return, Beaudreault agreed to pay ten percent of his earnings during the term of the agreement or during the term of any employment contract which defendant entered into with the assistance of GMM. GMM is a corporation with its principle place of business in New York, and Beaudreault is a television anchor-reporter in Houston, Texas.

Most aspects of the parties' relationship were centered in New York. Beaudreault initially approached GMM in exploration of entering into a management agreement by visiting GMM's office in New York, New York and speaking with Alfred Geller, CEO of GMM. Thereafter, the parties negotiated the terms of their relationship by telephone, and then in January 1990, Beaudreault travelled to New York to execute the management agreement with GMM. Immediately thereafter, in New York, Beaudreault attended a teaching program provided by GMM to improve his broadcast skills.

Generally, the services GMM was to provide under the contract consisted of training Beaudreault to improve his skills, review and editing of videotaped samples of Beaudreault's work, both to provide feedback and to prepare sample tapes to send to prospective employers, marketing of Beaudreault for new positions by preparing and sending application letters and sample tapes, and negotiating on Beaudreault's behalf, whether with his present employer or prospective employers. According to the agreement, Beaudreault was to have three primary named contacts at GMM, two of whom the record reveals presently reside in New York. The services listed above were likewise to be performed in New York, either in New York City or Westchester County, New York. Of course, the locations to which the finished work product of GMM would be sent or in which Beaudreault's skills would be exhibited were not in New York. In fact, Beaudreault has lived and worked in Houston since the beginning of the parties' relationship.

## DISCUSSION

### I. *Personal Jurisdiction*

Absent a specific grant of jurisdiction, the reach of a federal district court's personal jurisdiction is coterminous with that of the personal jurisdiction of a court of general jurisdiction in the state in which the court sits. *See* Fed.R.Civ.P. 4(k)(1)(A). Therefore, whether this Court has jurisdiction over Beaudreault is determined by whether a New York court would have personal jurisdiction over Beaudreault. *See A.I. Trade Finance, Inc. v. Petra Bank,* 989 F.2d 76, 80 (2d Cir.1993).

■ There are two types of jurisdiction, general and specific. *See Helicopteros Nacionales de Colombia v. Hall,* 466 U.S. 408, 414, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 (1984). With general jurisdiction, the claim need not arise out of the person's contact with the forum state, but the contact with the forum must be more substantial; with specific jurisdiction, the claim must arise out of the person's contacts with the forum, but the contact need not be as substantial. These two types of jurisdiction are reflected both in

New York's jurisdictional statutes, *see* New York Civ.Prac.L. & R. ("CPLR") §§ 301–302, and in the jurisprudence interpreting the Due Process limits of jurisdiction, *see Helicopteros Nacionales,* 466 U.S. at 414, 104 S.Ct. at 1872.

### A. *General Jurisdiction*

■ There is no allegation that Beaudreault has waived jurisdictional defenses, that he is domiciled in New York, that he was personally served while present in New York, or that he has consented to New York jurisdiction. Therefore, there is no general personal jurisdiction over Beaudreault in New York.

### B. *Specific Jurisdiction*

Since Beaudreault is not subject to the general jurisdiction of New York, this Court only has jurisdiction over him in this case if New York's long-arm statute asserts jurisdiction over him and that assertion jurisdiction comports with Due Process requirements under the circumstances.

■ 1. *Long–Arm Statute.*—Under CPLR § 302(a)(1), a court may exercise personal jurisdiction over a non-domiciliary if that person transacts any business within the state or contracts anywhere to supply goods or services within the state, provided the cause of action arises out of those acts. A nondomiciliary transacts business under CPLR § 302(a)(1) when he purposely avails himself of the privilege of conducting activities within New York, thus invoking the benefits and protections of its laws. *See CutCo Indus. v. Naughton,* 806 F.2d 361, 365 (2d Cir.1986).

■ In this case, Beaudreault transacted business within New York. He travelled to New York and negotiated with a New York-based management agency. He later travelled to New York for the purposes of entering into a management agreement, which specifically provided that Beaudreault's affairs would principally be handled by three representatives, at least two of whom worked in New York. In addition, the work to be done by GMM pursuant to the agreement would be done in New York, with

only the work product being disseminated elsewhere. Although as a general rule the activity of a plaintiff within the forum pursuant to the contract does not confer jurisdiction, *see, e.g., International Customs Assocs. Inc. v. Ford Motor Co.,* 893 F.Supp. 1251, 1262 (S.D.N.Y.1995), in this case Beaudreault's purpose in entering into this contract was to engage GMM to provide management, marketing, and training services for him, all of which were to be performed in New York. Therefore, Beaudreault purposely availed himself of the privilege of engaging a New York agent, thereby enjoying the protection of New York's laws. Furthermore, the instant action arises out of an alleged breach of this agreement, and therefore the acts giving rise to the claim arise out of Beaudreault's transacting business in New York.

■ 2. *Due Process.*—Having determined that New York's long-arm statute reaches the conduct at issue in this case, the Court must determine whether the exercise of jurisdiction would violate the Due Process Clause. *See A.I. Trade Finance,* 989 F.2d at 82. Under the well-established test, the exercise of jurisdiction violates Due Process unless the defendant has minimum contacts with the forum such that the exercise of jurisdiction comports with "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (internal quotation marks omitted). The "minimum contacts must have a basis in 'some act by which the defendant purposely avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.' " *Asahi Metal Indus. Co. v. Superior Court,* 480 U.S. 102, 109, 107 S.Ct. 1026, 1031, 94 L.Ed.2d 92 (1987) (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985)). Having found a purposeful availment, the Court considers five factors to determine whether the exercise of jurisdiction comports with notions of fair play and substantial justice: (1) the burden on the defendant, (2) the interests of the forum state, (3) the plaintiff's interest in obtaining relief, (4) the interstate judicial system's interest in obtaining the

most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies. *See id.* at 113, 107 S.Ct. at 1032–33.

■ In the case at bar, Beaudreault purposely availed himself of New York's laws by travelling to New York and executing a contract there whereby GMM would perform various services for him in New York. These contacts are sufficient to satisfy the test of *International Shoe.* Furthermore, the Court finds that the exercise of jurisdiction under these circumstances comports with notions of fair play and substantial justice. While it is burdensome for Beaudreault to litigate in New York, it is not so burdensome that to force him to do so would violate traditional notions of fair play. He travelled to New York to create the relationship; it is fair for him to travel to New York to resolve a dispute arising from that relationship. New York has an interest in protecting GMM—a corporation organized under its laws—by solving its contract disputes. GMM similarly is interested in obtaining relief on its contract which was created and, for the most part, performed in New York. The final two factors listed above do not affect the Court's determination of the fairness of the assertion of jurisdiction by New York. Under these circumstances, the Court finds that asserting jurisdiction over Beaudreault comports with traditional notions of fair play and substantial justice. Therefore, New York's long-arm jurisdiction in this case does not violate the Due Process Clause.

## II. *Venue*

■ Pursuant to 28 U.S.C. § 1391(a),
A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in ... (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is located....

In the case at bar, the omissions giving rise to this contract action occurred in two main locations—Houston and New York. It is alleged that Beaudreault failed to make pay-

ments from Houston, an omission that took place in Texas. Beaudreault alleges that GMM failed to perform under the contract, which is an omission that took place in New York, because most of the services to be performed by GMM, such as reviewing videotapes and providing feedback, and compiling job application packages, were to be performed in New York. Under these circumstances, the Court finds that a substantial part of the events or omissions giving rise to the claim occurred in New York, because much of the dispute concerns whether GMM performed under the contract. Therefore, venue in the Southern District of New York is proper.

III. *Transfer*

 Beaudreault also moves for transfer to the United States District Court for the Southern District of Texas. Pursuant to 28 U.S.C. § 1404, "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." However, unless the balance of convenience weighs clearly in favor of the defendant, the plaintiff's choice of forum should not be disturbed. *Nieves v. American Airlines*, 700 F.Supp. 769, 772 (S.D.N.Y.1988). In the case at bar, both sides have proffered lists of prospective witnesses for whom it would be more convenient to litigate in one forum or another, and therefore the convenience of the witnesses does not weigh heavily in favor of Beaudreault. In addition, the convenience of the parties does not weigh heavily in favor of Beaudreault. Under the circumstances, the Court declines to overrule plaintiff's choice of forum, and therefore declines to transfer the case to Texas.

## CONCLUSION

For the reasons stated above, the Court HEREBY DENIES defendant's motion (1) to dismiss based on (i) lack of personal jurisdiction or (ii) improper venue, or (2) to transfer pursuant to 28 U.S.C. § 1404. The parties shall appear in courtroom 18B, 500 Pearl

Street, for a pretrial conference at 10:30 am on February 2, 1996.

**SO ORDERED.**