**SAUDI COMPUTER AIDED TRANSLATION LTD.,**
Plaintiff,

v.

**WEIDNER COMMUNICATIONS CORPORATION and Bravice International, Ltd., Defendants.**

**No. 86 Civ. 9207 (PNL).**

United States District Court,
S.D. New York.

July 13, 1987.

Murphy & O'Connell, New York City, for plaintiff; Patrick J. Murphy, of counsel.

Chapman and Cutler, Chicago, Ill., Harry P. Lamberson, of counsel, Scheffler Karlinsky & Stein, New York City, Martin E. Karlinsky, of counsel; for defendants.

## OPINION AND ORDER

LEVAL, District Judge.

This is a diversity action brought by Saudi Computer Aided Translation, Ltd., (SCAT), a Saudi Arabian corporation. The defendants, Weidner Communications Corporation (WCC),[1] a Utah corporation with its principal place of business in Illinois, and Bravice International, Ltd. (Bravice), a Japanese Corporation, move to dismiss for lack of personal jurisdiction; improper venue; and, insufficiency of service as against Bravice. The defendants also move, pursuant to 28 U.S.C. § 1404(a), to transfer the action to the Northern District of Illinois. The motion to transfer to the Northern District of Illinois is granted.

### Background

WCC is engaged in the business of developing computer aided language translation systems used to translate foreign languages into English and English into foreign languages. Bravice is a fifty-one percent shareholder in WCC.

On August 25, 1984, one Michael Rittenberry, accompanied by a computer software expert, visited WCC's offices in Northbrook, Illinois. According to Nevil Garrett, the President of WCC, Rittenberry told him that he represented Prince Bandar Al Faisal, a member of the Royal family of Saudi Arabia, and that Prince Bandar was interested in establishing a computer based translation business. In October of 1984, Rittenberry returned to WCC's offices with three computer experts and spent three days examining WCC's English to Arabic source code, speaking with WCC's staff, and running numerous pages of documents through the English to Arabic system.[2]

---

1. On January 14, 1987, Weidner merged into Worldwide Communications Corporation, an Illinois corporation with its principal place of business in Northbrook, Illinois. Hereinafter, Weidner and Worldwide Communications Corporation are referred to collectively as "WCC".

2. SCAT seeking to defeat Illinois jurisdiction, contends that Rittenberry was acting as a principal and not an agent of Prince Bandar. Even in the unlikely event that Rittenberry was puffing and had not been appointed as an agent by Prince Bandar, it is not disputed that the plain-

Later that same month, Garrett, Rittenberry, Prince Bandar and other members of the royal family met in Riyadh, Saudi Arabia. As a product of their negotiations, a Letter of Intent was signed on October 30, 1984, by Garrett on behalf of WCC and Prince Bandar on behalf of a business venture operating under the name "The Saudi Group". The Letter of Intent, among other things, provided that "WCC and the Saudi Group (SG) will form a new Company in Saudi Arabia named [SCAT]" for the purpose of selling, leasing, and operating a computer aided translation business. (DX A.) The Letter of Intent further provided that SCAT would acquire the marketing rights to WCC's English to Arabic computer translation technology; that 51% of the stock in SCAT would be held by the Saudi Group and that 49% would be held by WCC; and that SCAT would pay WCC $2.5 million for the marketing rights, financed by a loan to SCAT from the Saudi Group. WCC was paid $100,000 of this amount upon signing the letter. On December 1, 1984, Rittenberry and Garrett returned to Riyadh for further discussions with Prince Bandar and Prince Saudi Abdullan Al Faisal.

On December 21, 1984, at Prince Bandar's request, Garrett met with three attorneys in New York, New York. Garrett understood that the meeting was for the purpose of formalizing the terms of the Letter of Intent. The meeting lasted approximately three hours and little or no progress was made toward formalizing the transaction. Garrett asserts that a substantial portion of the meeting consisted of unsuccessful attempts to reach Prince Bandar. The parties dispute whether Garrett made any representations at this meeting concerning WCC and its product.

On January 18 and on February 8, 1985, representatives of the Saudi group conducted further negotiations, as well as an expert inspection of WCC's software, at WCC's Northbrook, Illinois offices. Garrett, accompanied by counsel, then traveled to Aspen, Colorado, where he met with Prince Bandar and Rittenberry from February 20 through February 22. On February 22, 1985, Garrett, on behalf of WCC, and Princess Basma Bint Majid Abdul Aziz, on behalf of the Saudi Group, signed the Joint Venture Agreement. The agreement was subsequently signed by a representative of Bravice in Tokyo, Japan.

In September and October of 1985, a dispute developed between the parties. WCC contends that despite several demands for payment, the Saudi Group and SCAT withheld payment. SCAT contends that WCC did not properly or fully perform its obligations under the Joint Venture Agreement. In an attempt to resolve the dispute, Saudi representatives traveled to Northbrook, Illinois for further negotiations in early October, 1985. On October 15, 1985, Garrett signed a second agreement in Chicago, Illinois. Prince Saud later signed the second agreement in Riyadh. The parties' differences, however, have continued.

On October 6, 1986, WCC brought suit against SCAT, the Saudi Group, Prince Bandar, Princess Basma, Prince Saud, and one Ali Belkairous in the Northern District of Illinois. Thereafter, SCAT served Garrett with a copy of the complaint in the present action, accompanied by a summons directed to WCC on December 12, 1986, and a summons directed to Bravice on January 6, 1987.

## Discussion

### A. Long-Arm Jurisdiction

The plaintiff contends that personal jurisdiction is properly asserted against WCC and Bravice under New York's long-arm statute, N.Y.C.P.L.R. § 302(a). Under § 302(a), a court may exercise personal jurisdiction over a non-domiciliary who either: (1) transacts business within the state, or (2) commits a tortious act within the state. Although I need not finally resolve the issue by reason of my determination that venue should be transferred to the Northern District of Illinois, it is most unlikely that jurisdiction is properly asserted over the defendants under either provision.

tiff SCAT later adopted the benefits of Rittenberry's earlier negotiations in Illinois.

The only New York activity of WCC was the single December 21 meeting, which seems insufficient to constitute transacting business in New York. This unproductive meeting was part of a protracted negotiation. No agreement was reached at the meeting, no contract was signed, and no substantial negotiations took place. The meeting lasted only three hours, and the plaintiff's affidavits do not take issue with Garrett's assertion that much of the time was spent trying to reach Prince Bandar. Such an unproductive and insubstantial meeting is probably insufficient to constitute transacting business under § 302(a)(1). *See McKee Electric Co. v. Rauland-Borg Corp.*, 20 N.Y.2d 377, 283 N.Y.S.2d 34, 229 N.E.2d 604 (1967).

The plaintiff's contention that jurisdiction is properly asserted under § 302(a)(2) is no more forceful. Section 302(a)(2) requires the commission of a tort within the State of New York. The dispute between WCC and SCAT is in essence a contract dispute. The asserted tortious conduct—alleged misrepresentations made in the course of negotiations—amounts to little more than puffing.[3] SCAT does not contend that it acted in New York in reliance upon the alleged misrepresentations. It does not allege that each element of the tort occurred in New York. *See Selman v. Harvard Medical School*, 494 F.Supp. 603, 612–13 (S.D.N.Y.), *aff'd mem.*, 636 F.2d 1204 (2d Cir.1980). The meeting in New York was merely a small part of the extensive negotiations between the WCC and the Saudi Group and SCAT.

It is doubtful whether SCAT, by including a count in its complaint alleging that it was fraudulently induced to enter the joint venture agreement, and alleging that some of the misrepresentations were made at the New York meeting, can transform what is in essence a contract dispute into a tort action for the purposes of asserting long-arm jurisdiction. *See Trafalgar Capital Corp. v. Oil Producers Equipment Corp.*, 555 F.Supp. 305, 310 (S.D.N.Y.1983) (Weinfeld, J.). The contacts seem of doubtful sufficiency to confer New York jurisdiction over a contract action; these additional allegations of tortious misrepresentation, not causing injury in New York, will not change this result.

## B. *Transfer of Venue*

██ The defendant has shown strong grounds for transferring the action to the Northern District of Illinois pursuant to 28 U.S.C. § 1404(a). Although SCAT does retain New York counsel and employs New York computer specialists, it does not have a strong interest in litigating in New York; SCAT has not introduced any competent evidence showing that it maintains New York offices or that it stores records and documents in New York or that New York bears anything more than a *de minimis* connection with the relevant factual dispute. WCC, on the other hand, has a strong interest in litigating in Illinois: WCC's offices and principal place of business are located in Northbrook, Illinois; WCC's documentary evidence is located in Northbrook; the software involved in the dispute was developed at WCC's Northbrook offices; and, at least nine witnesses, including party witnesses, reside in Illinois. Weighing these factors, I find that the action should be transferred to the Northern District of Illinois. This conclusion is further supported by the presence of an apparently related action pending in the Northern District of Illinois.

---

3. The plaintiff contends that paragraphs 11–14 of the complaint set-out the defendants' misrepresentations made in New York. These paragraphs allege that WCC represented to SCAT that its product "would operate with such efficiency, rates of speed or production, and high degrees of accuracy that economic benefits would be obtained by SCAT in establishing a business for the purpose of providing English to Arabic translation service;" that in order to induce SCAT to enter the joint venture agreement, "WCC prepared a business plan and made representations to SCAT's agents regarding the capabilities and history of success achieved by the WCC product;" and that "WCC further represented that the WCC product was capable of achieving and would in fact achieve certain specified levels of performance, output and economic success if installed pursuant to the business proposal offered to SCAT's agents by WCC."

**1108**

Whether or not there is personal jurisdiction over the defendants and whether or not venue lies in the transferer court, courts have the power to transfer venue pursuant to § 1404(a) to a jurisdiction where the action might have been brought, if so doing will serve the interest of justice. *See Corke v. Sameiet M.S. Song of Norway,* 572 F.2d 77, 80 (2d Cir.1978); *Volk Corp. v. Art-Pak Clip Art Service,* 432 F.Supp. 1179, 1180–81 (S.D.N.Y.1977) (Weinfeld, J.).

### Conclusion

Because justice would not be served by dismissing the complaint and requiring SCAT to refile in Illinois, I deny WCC's motion to dismiss under CPLR § 302(a). I direct that the action be transferred to the Northern District of Illinois. The Clerk shall transmit the file. I make no ruling on Bravice's motion, which may be affected by the transfer and the likely consolidation of this action with the previous pending Illinois action.

SO ORDERED.