**POSVEN, C.A., Plaintiff,**

v.

**LIBERTY MUTUAL INSURANCE CO.**
d/b/a Liberty Bond Services,
Defendants.

**Liberty Mutual Insurance Co. d/b/a
Liberty Bond Services, Defendants,
Third–Party Plaintiffs,**

v.

**Posco Engineering & Construction Co.,
Ltd., Third–Party Defendants.**

No. 02 Civ. 0623(PKL).

United States District Court,
S.D. New York.

Jan. 12, 2004.

Dorsey & Whitney LLP, New York, NY, Minneapolis, MN, Neil E. McDonnell, Steven K. Champlin, for Plaintiff.

Thelen Reid & Priest LLP, New York, NY, Washington, DC, Jeffrey P. Rosenstein, Andrew D. Ness, Todd J. Wagnon, for Defendant, Third–Party Plaintiff.

White & Case LLP, New York, NY, John S. Willems, K. Allison White, for Third Party–Defendant.

### OPINION AND ORDER

LEISURE, District Judge.

Plaintiff POSVEN, C.A. ("POSVEN") commenced this diversity action seeking damages for breach of a $39,375,000 performance bond ("Performance Bond" or "Bond") issued by defendant and third-party plaintiff Liberty Mutual Insurance Co. d/b/a Liberty Bond Services ("Liberty Mutual"). The Bond secured performance by Energy Overseas International, Inc. ("EOI") and United Engineers, Inc. ("UEI") on a series of contracts between POSVEN and EOI, UEI, and third-party defendant POSCO Engineering & Construction Co., Ltd. ("POSEC"). Liberty Mutual, in turn, brought a third-party complaint against POSEC for exoneration and *quia timet*, subrogation, contribution, reimbursement, restitution and indemnity. In response, POSEC now moves to dismiss the third-party complaint for lack of personal jurisdiction, pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure. Liberty Mutual opposes the motion to dismiss and has filed a cross-motion to transfer the entire action to the Eastern District of Pennsylvania pursuant to 28 U.S.C. § 1404(a). Both POSVEN and POSEC oppose transfer of venue. For the reasons set for below, the Court denies the motion to dismiss and grants the motion to transfer.

### I. BACKGROUND

This case centers on the performance of various contracts relating to the construction of a hot-briquette iron facility in Peurto Ordaz, Venezuela ("the Project"). Plaintiff POSVEN is a Venezuelan company, with its principal place of business in Venezuela, formed as a joint venture among a number of companies including Pohang Iron & Steel Co., Ltd., third-party defendant POSEC–itself a subsidiary of Pohang Iron & Steel Co., Ltd., and UEI for the purpose of owning and operating the Project. (Third Party Compl. ¶ 2; Willems Aff., Ex. D.)

In 1997, POSEC, EOI, and UEI, formed a consortium and entered into a series of contracts ("the EPC Contracts") with POSVEN to provide engineering, procurement and construction services for the Project. (Willems Aff. Ex. C, E–H.) The EPC Contracts were not negotiated in New York and none of the parties to the EPC Contracts were New York citizens or residents (Koo Decl. ¶ 9–10); however, the EPC Contracts do contain New York choice of law provisions (Willems Aff., Exs. E–H). Under the EPC Contracts, EOI and UEI were required to furnish a performance bond for the benefit of POSVEN. (Compl.¶ 7.) To fulfill this obligation, EOI and UEI obtained the Bond from defendant Liberty Mutual, a Massachusetts company with its principle place of business in Boston, Massachusetts and its headquarters in the Philadelphia, Pennsylvania area. (Compl. ¶¶ 2, 8; Liberty Mutual Opp. at 9 n. 5.)

In early 2001, problems began to arise relating to the quality of hot-briquette iron produced by the Project and the construction and engineering of the Project. POSVEN now alleges in its complaint filed January 25, 2002 that EOI and UEI

breached the EPC Contracts in numerous respects, including failing to pay liquidated damages for delay and lack of performance to POSVEN, failing to perform required work and failing to correct deficient and defective work on the Project, abandoning the Project, and filing for bankruptcy. (Compl.¶9.) POSVEN contends that because EOI and UEI are in default and have been declared to be in default of their obligations under the EPC Contracts POSVEN is entitled to the full sum of the Bond. (Compl.¶¶ 10–12.)

Liberty Mutual, in turn, alleges in its third-party complaint that POSEC, a Korean company with its principal place of business in the Republic of Korea, is jointly and severally liable for the alleged breaches of the EPC Contracts and moreover that the alleged breaches relate in substantial part to the performance of equipment supplied by POSEC as part of its obligations under the EPC Contracts. (Third Party Compl. ¶¶ 6–12.) Accordingly, Liberty Mutual seeks recovery from POSEC under various subrogation, contribution and indemnification causes of action. POSEC has moved to dismiss the third-part complaint on the grounds that it is not subject to personal jurisdiction in this Court. Liberty Mutual argues that this Court does have personal jurisdiction over POSEC but that if the Court is inclined to find otherwise, the appropriate course is to transfer venue to the Eastern District of Pennsylvania where, according to Liberty Mutual, POSEC is subject to personal jurisdiction.

While most of the relevant acts and omissions in this case occurred in Venezuela, certain acts of jurisdictional significance occurred in both Pennsylvania and New York. Between 1997 and 2001, both UEI and EOI had their principal place of business in Philadelphia, Pennsylvania, where UEI performed most of its engineering and procurement duties under the EPC Contracts. (Marrone Decl. ¶3.) From February 1997 to October 1997, POSEC essentially ran a satellite office in space it rented within UEI's Philadelphia office. (*Id.*) As many as seven POSEC employees performed substantial procurement and engineering work relating to the EPC contracts out of this office, including taking part in meetings and other communications with UEI, EOI and various contractors and subcontractors and preparing reports outlining the progress of POSEC's performance under the EPC Contracts. (Marrone Decl. ¶3, Exs. 4–12.) In addition, POSVEN corresponded extensively with the Philadelphia offices of UEO, EOI and POSEC via mail, facsimile and telephone regarding the Project. (Marrone Decl. ¶3.) After October 1997, POSEC maintained a liaison officer in Philadelphia through mid-February 1998. (*Id.*)

The relevant contacts in New York occurred on May 16, 2001 when all of POSVEN's shareholders attended a meeting in New York City. The agenda for this meeting was to resolve the financial restructuring of POSVEN; however, the minutes of the meeting show substantial discussion regarding the construction and quality problems impeding the Project. (*Id.* ¶4 and Ex. 13.) Furthermore, the minutes indicate that the proposed financial restructuring was closely integrated with and largely contingent upon the resolution of these same construction and quality problems. (*Id.,* Ex. 13). POSEC was represented at the meeting by POSVEN's general counsel, Mr. Fernando Pelaez Pier, Esq. (*Id.*) Mr. Pier was not an employee of POSEC, but rather was granted power of attorney for the purpose of representing POSEC in the May 16 meeting. (Supp. Koo Decl. ¶4.) Specifically, Mr. Pelaez Pier was authorized to represent POSEC in resolving the financial restructuring of POSVEN, including taking part

in the deliberations and voting on this issue. (Supp. Koo Decl., Ex. A.)

## II. DISCUSSION

### A. Personal Jurisdiction

On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, it is well established that "the plaintiff bears the burden of showing that the court has jurisdiction over the defendant." *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez,* 171 F.3d 779, 784 (2d Cir.1999); *Metropolitan Life Ins. Co. v. Robertson–Ceco Corp.,* 84 F.3d 560, 566 (2d Cir.1996). "Prior to discovery, a plaintiff may defeat a motion to dismiss based on legally sufficient allegations of jurisdiction." *Metropolitan Life Ins. Co.,* 84 F.3d at 566. Where the parties have conducted discovery on the jurisdictional issue but no evidentiary hearing has been held, the plaintiff must aver facts that, if credited by the ultimate trier of fact, would establish jurisdiction over the defendant. *Id.* at 567. "Eventually, personal jurisdiction must be established by a preponderance of the evidence, either at an evidentiary hearing or at trial. But where the issue is addressed on affidavits, all allegations are construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor, notwithstanding a controverting presentation by the moving party." *A.I. Trade Fin., Inc. v. Petra Bank,* 989 F.2d 76, 79–80 (2d Cir.1993); *see also United States Theatre Corp. v. Gunwyn/Lansburgh Ltd. Partnership,* 825 F.Supp. 594, 595 (S.D.N.Y.1993). The parties have not indicated in their pleadings whether they have actually engaged in discovery relating to the question of jurisdiction over POSEC; however, Liberty Mutual and POSEC have submitted affidavits and supporting documents supporting their jurisdictional arguments. The affidavits and documents of both parties are, for the most part, factually consistent and there are no significant disagreements over the jurisdictional facts in this case. Rather, the parties differ over the legal consequences of those facts. Accordingly, the Court will determine whether the facts, as alleged by third-party plaintiff Liberty Mutual, are legally sufficient to support personal jurisdiction over third-party defendant POSEC.

"Absent a specific grant of jurisdiction, the reach of a federal district court's personal jurisdiction is coterminous with that of the personal jurisdiction of a court of general jurisdiction in the state in which the court sits." *Geller Media Management, Inc. v. Beaudreault,* 910 F.Supp. 135, 137 (S.D.N.Y.1996) (Leisure, J.) (citing Fed.R.Civ.P. 4(k)(1)(A)). Thus, "the amenability of a foreign corporation to suit in a federal court in a diversity action is determined in accordance with the law of the state where the court sits, with 'federal law' entering the picture only for the purpose of deciding whether a state's assertion of jurisdiction contravenes a constitutional guarantee." *Metropolitan Life Ins.,* 84 F.3d at 567 (quoting *Arrowsmith v. United Press Int'l,* 320 F.2d 219, 223 (2d Cir.1963) (en banc)). To determine whether it has personal jurisdiction over POSEC, the Court engages in a two-part inquiry. First, it must determine whether there is personal jurisdiction over POSEC under New York state law; second, if New York law provides for personal jurisdiction, the Court must determine whether the assertion of jurisdiction comports with the constitutional requirements of due process. *Id.*

Third-party plaintiff Liberty Mutual contends that this Court has personal jurisdiction over third-party defendant POSEC pursuant to New York's long arm statute, which allows a court to exercise specific jurisdiction over a non-domiciliary who, in person or through an agent,

"transacts any business within the state." N.Y. C.P.L.R. § 302(a)(1) (McKinney's 2001).[1] Under section 302(a)(1), jurisdiction is proper when: (1) the defendant has transacted business in New York; and (2) the cause of action arises out of the subject matter of the transacted business. *Id.; CutCo Indus., Inc. v. Naughton,* 806 F.2d 361, 365 (2d Cir.1986). A non-domiciliary transacts business under section 302(a)(1) when he "purposefully avails [himself] of the privilege of conducting activities within [New York], thus invoking the benefits and protections of its laws." *CutCo Indus.,* 806 F.2d at 365 (quoting *McKee Elec. Co. v. Rauland–Borg Corp.,* 20 N.Y.2d 377, 382, 283 N.Y.S.2d 34, 37–38, 229 N.E.2d 604 (1967)). Courts look to the totality of the circumstances to determine whether the defendant has engaged in such purposeful activity and require a "substantial nexus" between the business transacted and the cause of action sued upon. *See PDK Labs, Inc. v. Friedlander,* 103 F.3d 1105, 1109 (2d Cir.1997); *Agency Rent A Car System, Inc. v. Grand Rent A Car Corp.,* 98 F.3d 25, 29–31 (2d Cir.1996); *CutCo Indus.,* 806 F.2d at 365; *Cedric Kushner Productions, Ltd. v. Thobela,*

1994 WL 163992 at *2 (S.D.N.Y.1994) (Leisure, J.). In a breach of contract case, the central question is "whether the defendant has performed purposeful acts in · New York in relation to the contract." *Cedric Kushner Productions,* 1994 WL 163992 at *2 (quoting *A.C.K. Sports, Inc. v. Doug Wilson Enterprises,* 661 F.Supp. 386, 390 (S.D.N.Y.1987)). Notably, New York's provision for specific jurisdiction under section 302 does not extend as far as the federal Constitution permits. *Cuccioli v. Jekyll & Hyde Neue Metropol Bremen Theater Produktion GmbH & Co.,* 150 F.Supp.2d 566, 572 (S.D.N.Y.2001).

■ Liberty Mutual argues that PO-SEC is subject to personal jurisdiction in this Court based on the attendance of its agent, Mr. Pelaez Pier, at the POSVEN shareholders meeting in New York on May 16, 2001 and further because the EPC Contracts are subject to New York law.[2] The Court finds, however, that while these contacts do relate to this action, they are insufficient to submit POSEC to personal jurisdiction in New York.

Although it initially denied attending any meetings in New York relating to the

---

**1.** As opposed to the traditional bases for personal jurisdiction of presence, domicile and doing business, which confer "general jurisdiction," meaning that the claim asserted by the plaintiff need not have any relationship to activities of the defendant in New York, section 302 provides for "specific jurisdiction," meaning that the cause of action must arise out of or relate to the defendant's contacts with New York. *See* N.Y. C.P.L.R. §§ 301–302; *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472–73, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). Where general jurisdiction is asserted, the claim need not arise out of the defendant's contacts with the forum state, but the contacts must be substantial; to assert specific jurisdiction, the claim must arise out of or relate to the defendant's contacts with the forum state, but the contacts need not be as substantial. *See Burger King Corp.,* 471 U.S. at 472–73, 105 S.Ct. 2174; *Helicopteros Naci-*

onales de Colombia, S.A. v. Hall, 466 U.S. 408, 414, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984); *Geller Media Management, Inc. v. Beaudreault,* 910 F.Supp. at 137. Liberty Mutual does not assert, nor does there appear to be any basis for, general personal jurisdiction over POSEC in New York.

**2.** Liberty Mutual also argues that it is likely that POSEC's Philadelphia-based employees traveled back and forth to Korea via New York's Kennedy Airport and requests discovery on this question. The Court denies this request. Even if POSEC's employees did use Kennedy Airport when traveling between Philadelphia and Korea, it would not help establish personal jurisdiction in this case as these alleged contacts are not sufficiently purposeful nor sufficiently related to Liberty Mutual's claims to affect the jurisdiction analysis.

Project (Koo Decl. ¶ 10), POSEC now admits that it was represented by Mr. Pelaez Pier at the May 16 shareholders meeting (Supp. Koo Decl. ¶ 4). The minutes of the meeting clearly indicate that issues central to this litigation, including construction, engineering and quality problems at the Project, were discussed. (Marrone Dec., Ex. 13.) The minutes also clearly show that POSEC was present at the meeting, albeit through an agent. (*Id.*) POSEC argues, however, that its presence at the meeting does not provide a basis for personal jurisdiction because the single meeting does not rise to the level of transacting business for the jurisdictional analysis and further because Liberty Mutual's third-party complaint does not arise from this limited contact.

As an initial matter, POSEC's view of Liberty Mutual's complaint, and the proper scope of this litigation are too narrow. POSEC argues that there can be no personal jurisdiction over POSEC in New York because Liberty Mutual's third-party claim is not sufficiently linked to the topics discussed at the meeting. According to POSEC, Liberty Mutual's third-party claims against POSEC are all "inexorably linked" to the Performance Bond issued by Liberty Mutual. (POSEC Reply at 8.) Because the Bond was not discussed at the May 16 meeting, POSEC contends that attendance at the meeting bears no relation to Liberty Mutual's third-party complaint. *Id.* This argument misses the mark. Liberty Mutual's potential liability on the Bond and POSEC's potential liability to Liberty Mutual hinge on the alleged breaches of the EPC Contracts. These alleged breaches, in turn, are closely related to the construction, engineering and quality problems discussed at the May 16 meeting. It follows that there is a substantial nexus between the May 16 meeting and Liberty Mutual's third-party complaint and that the meeting is clearly a relevant contact for the jurisdictional analysis.

Nevertheless, POSEC is correct in asserting that its presence at the May 16 meeting is insufficient to show that it transacted business in New York. While the transacting business test has been interpreted to turn more on the quality rather than the quantity of contacts and New York law allows the assertion of personal jurisdiction based on a single transaction of business in New York, *see Bank Brussels Lambert,* 171 F.3d at 787; *Premier Lending Servs., Inc. v. J.L.J. Assocs.,* 924 F.Supp. 13, 15 (S.D.N.Y.1996), POSEC's presence at the May 16 meeting does not establish the purposeful availment of the benefits and protections of New York law that section 302(a)(1) requires.

Courts have been justifiably skeptical of attempts to assert personal jurisdiction over a defendant based on a single meeting in New York, especially where that meeting did not play a significant role in establishing or substantially furthering the relationship of the parties. *See, e.g., Kahn Lucas Lancaster, Inc. v. Lark Int'l Ltd.,* 956 F.Supp. 1131, 1135–36 (S.D.N.Y.1997) (finding, in a contract dispute, that six meetings in New York characterized as progress reports or "courtesy calls" attended by defendant subsequent to formation of the contract did not confer personal jurisdiction over defendant); *Premier Lending Servs., Inc.,* 924 F.Supp. at 17 (assigning only "slight relevance for jurisdictional purposes" to a meeting that occurred after execution of agreement and "essentially consisted of a brief progress report"); *United States Theatre Corp. v. Gunwyn/Lansburgh Ltd. Partnership,* 825 F.Supp. 594, 596 (S.D.N.Y.1993) ("When the visit ... is not for the purpose of initiating or forming a relationship, but is to alleviate problems under a pre-existing relationship, New York courts have de-

clined to assert jurisdiction."); *General Instrument Corp. v. Tie Mfg., Inc.,* 517 F.Supp. 1231, 1232 (S.D.N.Y.1981) (finding that meetings held in New York subsequent to contract formation for the purpose of reaching a compromise to a performance dispute did not confer personal jurisdiction); *cf. Ryan v. Allen,* 1997 WL 567717 at *2 (S.D.N.Y.1997) (finding that shareholders meetings held in the United States by defendant foreign corporations did not meet the minimum contacts analysis necessary to satisfy the due process requirements for personal jurisdiction).

For example, in *United States Theatre Corp.,* plaintiff sought to recover for damage to a building located in Washington, D.C. from defendant, a Massachusetts company that owned an adjacent property in Washington. 825 F.Supp. at 595. According to plaintiff, the damage to its building was the result of improper demolition work on defendant's property. *Id.* Plaintiff sought to assert jurisdiction over defendant in the Southern District of New York based, in part, on a single meeting between the parties held in New York. *Id.* at 596. The Court, however, found that because the purpose of the New York meeting was to facilitate the planned demolition work in Washington and did not serve to form any business relationship in New York, it did not establish any purposeful availment of a New York forum.

Similarly, in this case, the minutes of the shareholders meeting show that the discussion focused on the engineering, construction and financing problems of the Project, which, after all, was located in Venezuala. None of the parties to the EPC Contracts are New York citizens or residents, the EPC Contracts were not negotiated in New York, and Liberty Mutual has not alleged that any significant performance contemplated by the EPC Contracts occurred in New York. Viewed

in light of these circumstances, the meeting was an isolated contact with New York, more fortuitous than purposeful. Moreover, while the parties did discuss important aspects of the Project, the meeting was more akin to a progress report; they did not substantially further their relationships with each other so as to establish New York as a proper forum for disputes relating to the Project.

The fact that the EPC Contracts contain New York choice of law clauses does not tip the balance in favor of asserting jurisdiction. Although such clauses are "relevant in determining whether a nondomiciliary 'transacted business' for [section 302(a)(1) ] purposes," they are not dispositive. *CutCo Indus.,* 806 F.2d at 365; *Kahn Lucas Lancaster, Inc.,* 956 F.Supp. at 1136–37. Here, while the choice of law provisions of the EPC Contracts are relevant to Liberty Mutual's attempt to assert jurisdiction over POSEC on its third-party complaint, they do not carry enough weight enable Liberty Mutual to meet its burden. *Cf. Premier Lending Servs., Inc.,* 924 F.Supp. at 17; *Cedric Kushner Productions,* 1994 WL 163992 at *4. Accordingly, POSEC's limited contacts with New York are insufficient to show that it transacted business in the state and POSEC is not subject to personal jurisdiction under New York's long-arm statute. Having found that the law of the forum state does not provide for personal jurisdiction, the Court need not address the issue of whether personal jurisdiction over POSEC in New York would comport with the requirements of due process under the federal Constitution.

**B. Motion to Transfer Venue**

■ As an alternative to dismissing POSEC from this action, Liberty Mutual argues that the Court should transfer the case to the United States District Court for the Eastern District of Pennsylvania pursuant to 28 U.S.C. § 1404(a). Under

that section, "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a) (2000). Liberty Mutual contends that such a transfer is appropriate because all of the parties to this action are subject to personal jurisdiction in Pennsylvania and the ability to litigate related claims in a single forum and avoid duplicative litigation substantially weighs in favor of transfer. Both POSVEN and POSEC oppose the motion to transfer on the grounds that POSEC is not subject to jurisdiction in Pennsylvania and the balance of convenience to the parties and witnesses and the interest of justice do not weigh in favor of transfer. In addition, POSEC argues that Liberty Mutual has not shown any "change in circumstances" justifying transfer and that the third-party complaint should be dismissed because Liberty Mutual was not diligent in investigating whether there was personal jurisdiction over POSEC in New York.[3]

In order to obtain a transfer of venue, the moving party bears the burden of es-

---

**3.** Although the parties have not contested the issue, it bears noting that the lack of personal jurisdiction over third-party defendant POSEC does not affect the Court's ability to transfer the case. In the Second Circuit, district courts may transfer an action "even if there is there is no personal jurisdiction over the defendants, and whether or not venue is proper in [the] district." *Volk Corp. v. Art–Pak Clip Art Serv.*, 432 F.Supp. 1179, 1181 (S.D.N.Y.1977) (Weinfeld, J.); *see also Corke v. Sameiet M.S. Song of Norway*, 572 F.2d 77, 80 (2d. Cir.1978) (Oakes, J.) (adopting Judge Weinfeld's statement of the law); *Stein v. Microelectronic Packaging, Inc.*, 1999 WL 540443 at *7 (S.D.N.Y.1999); *Saudi Computer Aided Translation Ltd. v. Weidner Communications Corp.*, 663 F.Supp. 1104, 1108 (S.D.N.Y. 1987) (Leval, J). This statement of the law had its genesis in *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466, 82 S.Ct. 913, 8 L.Ed.2d 39 (1962), which held that a district court lacking both personal jurisdiction and proper venue could transfer a case to a district where jurisdiction could be obtained and venue was proper under 28 U.S.C. § 1406(a), the section of the United States Code that provides for transfer in the interest of justice where a case is filed "laying venue in the wrong division or district." Relying substantially on Judge Weinfeld's *Volk Corp.* opinion, the Second Circuit extended this principle in *Corke* to cases where jurisdiction is lacking but venue is proper in the transferor court by reading section 1406(a) in conjunction with section 1404(a), the section that applies when venue is proper in the initial court. 572 F.2d at 80. The Court in *Corke* pointedly declined to elect between section 1406(a) and 1404(a) as the correct authority for transfer where jurisdic-

tion is lacking over a defendant but venue is proper, but instead found such authority by reading the sections together and placing a "judicial gloss" on the statutory text. 572 F.2d at 80 n. 9.

Since *Corke,* some courts in the Second Circuit considering this issue have continued to rely on *both* section 1404(a) and 1406(a) read together as providing authority for transfer where jurisdiction is lacking over a defendant in the transferor court, but venue is technically proper. *See, e.g., Alexander & Alexander Inc. v. Donald F. Muldoon & Co.*, 685 F.Supp. 346, 348 (S.D.N.Y.1988); *In re Ski Train Fire in Kaprun, Austria on Nov. 11, 2000*, 257 F.Supp.2d 648, 649–50 (S.D.N.Y. 2003). The majority, however, have read *Corke* and *Volk Corp.* to authorize transfer under *either* section 1404(a) or section 1406(a) in such cases, *see, e.g., SongByrd, Inc. v. Estate of Grossman*, 206 F.3d 172, 179 n. 9 (2d. Cir.2000) (Newman, J.) ("[W]hether or not venue was proper, lack of personal jurisdiction could be cured by transfer to a district in which personal jurisdiction could be excercised, with the transfer authority derived from either section 1406(a) or section 1404(a)."); *Spar, Inc. v. Information Resources, Inc.*, 956 F.2d 392, 394 (2d Cir.1992) (holding that tranfer pursuant to section 1406(a), notwithstanding proper venue in the transferor court, may be permitted in the interests of justice); *Fresca v. Arnold*, 595 F.Supp. 1104, 1105 (E.D.N.Y.1984) (McLaughlin, J.) ("It is of no consequence, however, whether plaintiff's reliance on § 1406(a), as opposed to the general transfer statute, 28 U.S.C. § 1404(a), is proper [as a] district court need not elect between the two sections . . . ."), so that it is appropri-

tablishing 1) that the action is one that "might have been brought" in the district to which the movant seeks to have it transferred, and 2) that transfer is appropriate based on the convenience of the parties, the convenience of witnesses and the interests of justice. *See Royal Ins. Co. of America v. Tower Records, Inc.,* 2002 WL 31385815 at *2 (S.D.N.Y.2002) (Leisure, J.); *Lesser v. Camp Wildwood,* 2002 WL 1792039 at *2 (S.D.N.Y.2002); *Reliance Ins. Co. v. Six Star, Inc.,* 155 F.Supp.2d 49, 56 (S.D.N.Y.2001); *Halliwell v. Moran Towing & Trans. Co., Inc.,* 1999 WL 258260 at *1 (S.D.N.Y.1999). In determining whether to transfer venue under section 1404(a), courts employ an "individualized, case-by-case consideration of convenience and fairness." *Reliance,* 155 F.Supp.2d at 56 (quoting *Stewart Org., Inc. v. Ricoh Corp.,* 487 U.S. 22, 29, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988)). This determination is subject to the sound discretion of the district court. *Friedland v. Holiday Inns, Inc.,* 1989 WL 101942 at *1 (S.D.N.Y.1989) (Leisure, J.) (citing *Golconda Mining Corp. v. Herlands,* 365 F.2d 856, 857 (2d Cir.1966)).

*1. The Action "Might Have Been Brought" in the Eastern District of Pennsylvania*

█ For the purposes of section 1404(a), an action might have been brought in an-

other forum if, at the time the action was originally filed, the transferee court would have had subject matter jurisdiction and personal jurisdiction over the defendants, and if venue would have been proper in the transferee court. *Schechter v. Tauck Tours, Inc.,* 17 F.Supp.2d 255, 258 (S.D.N.Y.1998); 17 James Wm. Moore et al., Moore's Federal Practice § 111.12 (3d ed.2003). The parties do not dispute, nor do there appear to be any grounds for disputing, that the Eastern District of Pennsylvania would have subject matter jurisdiction in this action or that venue is proper in that district. Furthermore, since defendant Liberty Mutual is headquartered in the Philadelphia area, within the Eastern District of Pennsylvania, it is clearly subject to personal jurisdiction there. The parties disagree, however, on whether third-party defendant POSEC is subject to personal jurisdiction in the Eastern District of Pennsylvania. The Court finds that personal jurisdiction could have been obtained over POSEC in Pennsylvania for the purposes of this action and, accordingly, that the action might have been brought there.

█ Liberty Mutual claims that POSEC is subject to jurisdiction in the Eastern District of Pennsylvania under Pennsylvania's long-arm statute, 42 Pa. Cons.

ate to analyze the transfer issue *solely* under section 1404(a), *see, e.g., Fort Knox Music, Inc. v. Baptiste,* 257 F.3d 108, 111–112 (2d Cir.2001); *Atlantic Mutual Ins. Co., Inc., v. CSX EXPEDITION,* 2003 WL 21756414 at *2 (S.D.N.Y.2003); *Hutton v. Priddy's Auction Galleries, Inc.,* 275 F.Supp.2d 428, 440 (S.D.N.Y.2003); *Stein,* 1999 WL 540443 at *7; *Anglo American Ins. Group, P.L.C. v. CalFed, Inc.,* 916 F.Supp. 1324, 1329–30 (S.D.N.Y. 1996); *B. Shackman & Co., Inc., v. Original Christmas Store,* 1987 WL 16957 at *1 (S.D.N.Y.1987); *Saudi Computer Aided Translation Ltd.,* 663 F.Supp. at 1108. Moreover, courts have recognized that if transfer pursu-

ant to 1404(a) is appropriate, then *a fortiori* tranfer is appropriate under 1406(a), *Matra Et Manurhin v. International Armament Co.,* 628 F.Supp. 1532, 1534 n. 2 (S.D.N.Y.1986), and that the crucial determination under either section is whether the proposed transfer is "in the interest of justice." *In re Ski Train Fire,* 257 F.Supp.2d at 650. As there is no allegation in this case that venue is improper in the Southern District of New York, the Court will analyze the transfer question under section 1404(a), keeping in mind, however, that the key inquiry under both 1404(a) and 1406(a) is whether transfer is in the interest of justice.

Stat. Ann. § 5322 (2003), which provides for jurisdiction over persons "as to a cause of action or other matter arising from [their transacting] any business in this Commonwealth." *Id.* § 5322(a).[4] Transacting business in Pennsylvania includes, among other things, "the doing by any person in this Commonwealth of a series of similar acts for the purpose of thereby realizing pecuniary benefit or otherwise accomplishing an object." *Id.* § 5322(a)(1). Unlike New York's long-arm statute, the Pennsylvania statute extends jurisdiction over non-residents "to the fullest extent allowed under the Constitution of the United States" and authorizes jurisdiction "based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States." *Id.* § 5322(b).

■ Thus, the first step in analyzing jurisdiction under section 5322 is to determine whether "the relationship among the defendant, the cause of action, and the forum falls within the 'minimum contacts' framework first announced in *International Shoe Co. v. Washington,* [326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), and its progeny]." *Mellon Bank (East) PSFS, Nat'l Assoc. v. Farino,* 960 F.2d 1217, 1221 (3d Cir.1992). In these cases, the Supreme Court has established that the Due Process Clause of the Constitution requires "fair warning that a particular activity may subject [an individual] to the jurisdiction of a foreign sovereign," *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (quoting *Shaffer v. Heitner,* 433 U.S. 186, 218, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977) (Stevens, J., concurring in judgment)), in order to "[give] a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit," *id.* (quoting *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)). Importantly, "[w]here a forum seeks to assert specific jurisdiction over an out-of-state defendant who has not consented to suit there, this 'fair warning' requirement is satisfied if the defendant has 'purposefully directed' his activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Id.* (quoting *Keeton v. Hustler Magazine,* 465 U.S. 770, 774, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984) and *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984)).

■ Under this analysis, "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting business within the forum State, thus invoking the benefits and protections of its laws." *Mellon Bank,* 960 F.2d at 1221 (quoting *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958)). Furthermore, "the defendant's conduct and connection with the forum State [must be] such that he should reasonably anticipate being haled into court there." *Id.* (quoting *World Wide Volkswagen,* 444 U.S. at 297, 100 S.Ct. 559); *see also Dayhoff, Inc. v. H.J. Heinz Co.,* 86 F.3d 1287, 1302 (3d Cir.1996); *LDM Systems, Inc. v. Russo,* 1997 WL 431005 at *3 (E.D.Pa.1997); *Eagle Traffic Control, Inc. v. James Julian, Inc.,* 933 F.Supp. 1251, 1255 (E.D.Pa.1996). If a court determines that a defendant has sufficient minimum contacts in the forum state, it may then inquire "whether the

---

4. As was the case *supra,* with regard to personal jurisdiction in New York, Liberty Mutual does not assert any basis for general jurisdiction over POSEC and the facts before the Court do not show sufficient contacts for such jurisdiction.

assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" *Mellon Bank,* 960 F.2d at 1222 (quoting *Burger King,* 471 U.S. at 476, 105 S.Ct. 2174). Thus, in appropriate cases, a court may consider "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering substantive social policies." *Id.* (quoting *Burger King,* 471 U.S. at 477, 105 S.Ct. 2174).

POSEC's contacts in Pennsylvania clearly meet this test. The record before the Court shows that POSEC maintained an office in Philadelphia with as many as seven employees from at least February 1997 through October 1997 for the purpose of performing engineering and procurement work under the EPC Contracts. POSEC paid rent to UEI for this office space and sent correspondence on POSEC letterhead with its Philadelphia office address. POSEC employees at the Philadelphia office took part in numerous meetings and communications with UEI and EOI representatives, as well as with subcontractors and vendors, relating to the Project and compiled various progress reports on POSEC's performance of the EPC Contracts. POSEC further maintained a liaison employee in Philadelphia through February of 1998.

These contacts are more than sufficient to show that POSEC purposefully availed itself of the privilege of doing business in Pennsylvania and invoked the benefits and privileges of Pennsylvania's laws. Indeed, POSEC does not dispute this issue, but instead argues that the cause of action in the Liberty Mutual's third-party complaint does not arise from these contacts, and thus there is no personal jurisdiction over

POSEC in this action. As discussed above, *see supra,* section II.A., POSEC takes too narrow a view of the subject of this litigation. Under Pennsylvania law and the federal Constitution, specific personal jurisdiction over a particular defendant requires that the litigation "result[ ] from alleged injuries that 'arise out of or relate to'" the defendant's contacts with the forum state. *Mellon Bank,* 960 F.2d at 1222 (quoting *Burger King,* 471 U.S. at 472, 105 S.Ct. 2174). Here, POSVEN's complaint seeks recovery on the Performance Bond for UEI's and EOI's alleged breaches of the EPC Contracts. In its third-party complaint. Liberty Mutual states that it has a claim against POSEC because POSEC is jointly and severally liable to POSVEN under the EPC Contracts for the alleged breaches. In addition, Liberty Mutual claims that these alleged breaches relate in substantial part to the performance of equipment supplied by POSEC under the EPC Contracts. Therefore, the subject of this action easily encompasses the performance and alleged breaches of the EPC Contracts. In turn, these issues clearly relate to POSEC's uncontested and substantial contacts in Pennsylvania. Put another way, POSEC's establishment of an office and performance of substantial portions of its obligations under the EPC Contracts in Philadelphia undoubtedly should have put POSEC on notice that it could be haled into court there in an action such as this one.

Finally, none of the parties have argued that the fairness factors outlined above would change the analysis here; this is appropriate, as none of these factors would preclude personal jurisdiction over POSEC. Therefore, personal jurisdiction over POSEC in Pennsylvania in this action meets the requirements of Pennsylvania law and the federal Constitution, and the Court is satisfied that this action "might

have been brought" in the Eastern District of Pennsylvania.

### 2. Transfer is Appropriate Based on the Balance of Convenience and the Interests of Justice

 In balancing the convenience and fairness of a proposed transfer, courts in this Circuit are guided by the following factors: (1) the convenience of witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of the operative facts; (5) the availability of process to compel attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded to plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based upon the totality of the circumstances. *E.g., Reliance Ins. Co. v. Six Star, Inc.,* 155 F.Supp.2d 49, 56–57 (S.D.N.Y.2001); *Trehern v. OMI Corp.,* 1999 WL 47303 at *2 (S.D.N.Y.1999); *Ouding v. Nat. R.R. Passenger Corp.,* 1994 WL 381437 at *1 (S.D.N.Y.1994) (Leisure, J.).

 The parties do not seriously contest the application factors (2) through (6) (the location of relevant documents and the relative ease of access to sources of proof, the convenience of the parties, the locus of the operative facts, the availability of process to compel attendance of unwilling witnesses, and the relative means of the parties) as they do not weigh in favor of either District in this case. The parties do, however, make arguments as to the convenience of the witnesses, the forum's familiarity with the governing law, the weight accorded to plaintiff's choice of forum, and trial efficiency and the interests of justice. As discussed below, none of these factors weigh heavily in favor of keeping this action in the Southern District of New York. In contrast, the ability to obtain personal jurisdiction over POSEC and to litigate POSVEN and Liberty Mutual's claims in the same action strongly favor transferring the case to the Eastern District of Pennsylvania.

### The Convenience of Witnesses:

POSVEN argues that New York is a more convenient location for many of the witnesses in this case. It is true that, in many cases, the convenience of witnesses is the most significant factor in determining whether to transfer venue. *See, e.g., Friedland v. Holiday Inns. Inc.,* 1989 WL 101942 at *1 (S.D.N.Y.1989). This, however, is not one of those cases. POSVEN lists twelve witnesses from Venezuela and one witness from Mexico, for whom it claims New York is more convenient than Philadelphia. In support of this assertion, POSVEN notes that New York's location, reputation, and ease of access make it more likely that non-party witnesses will voluntarily travel to this Court. This argument is unpersuasive. POSVEN has not offered any reason why travel from Venezuela and Mexico to Philadelphia is appreciably more inconvenient than traveling from those locations to New York.[5]

---

5. *Indeed, POSVEN's argument seems to suggest that the Court should take into account New York's desirability as a place to visit in determining whether to transfer venue. The Court is unaware of any case supporting such an argument and takes no position on whether Philadelphia or New York has a better "reputation" on this score. The Court notes, however, that Philadelphia has its own inter-* national airport, several professional sports teams, and a newly revitalized downtown shopping and dining district. More importantly, Philadelphia has played a unique and perhaps unrivaled role in our nation's history, having hosted the Continental Congress and the drafting of the Declaration of Independence and the United States Constitution, as well as having served as the Nation's capital

Thus, this factor does not weigh in favor of either District.

*The Forum's Familiarity with the Governing Law:*

POSVEN correctly points out that the EPC Contracts are governed by the law of the State of New York, and that this factor weighs against transfer. A forum's familiarity with the governing law, however, is one of the least important factors in determining a motion to transfer, especially where no complex questions of foreign law are involved. *See Lesser v. Camp Wildwood*, 2002 WL 1792039 at *6 (S.D.N.Y. 2002); *Vassallo v. Niedermeyer*, 495 F.Supp. 757, 760 (S.D.N.Y.1980). The parties have not indicated that any complex or novel issues of New York law are implicated here, and this Court is confident that the courts in the Eastern District of Pennsylvania are exceptionally competent in the application of New York law. Thus, this factor is accorded little weight.

*The Weight Accorded to Plaintiff's Choice of Forum:*

Similarly, little weight is accorded to POSVEN's choice of the Southern District of New York as the forum for this action. Ordinarily, a plaintiff's choice of forum is given considerable weight. *See Lesser*, 2002 WL 1792039 at *3 (2002); *Orb Factory, Ltd. v. Design Science Toys, Ltd.*, 6 F.Supp.2d 203, 208 (S.D.N.Y.1998); *see also Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, 67 S.Ct. 839, 91 L.Ed. 1055 (1947) (applying the common law doctrine of forum non conveniens). However, where, as here, the plaintiff has chosen a forum that is neither the district of its residence, nor the locus of the operative facts in the case, this choice is considerably less important. *See Halliwell*, 1999 WL 258260 at *1; *Anadigics, Inc. v. Raytheon Co.*, 903 F.Supp. 615, 617 (S.D.N.Y.1995); *Morales v. Navieras de Puerto Rico*, 713 F.Supp. 711, 712–13 (S.D.N.Y.1989); *Unico Indus. Corp. v. S.S. Andros City*, 323 F.Supp. 896, 897 (S.D.N.Y.1971) (Weinfeld, J.) ("[P]laintiffs' claim that their selection of a forum is entitled to great weight is erroneous, particularly when no judicially recognized circumstances have been shown to exist which would justify that choice."); *see also Iragorri v. United Tech. Corp.*, 274 F.3d 65, 70–73 (2d Cir.2001) (discussing the varying degrees of deference accorded plaintiff's choice of forum under the doctrine of forum non conveniens).

POSVEN has not indicated any significant connection between this action and the Southern District of New York, other than the New York choice of law provisions in the EPC Contracts. POSVEN is a Venezuelan corporation, with its principal place of business in Venezuela. On the record before the Court, it appears that the locus of most of the operative facts is Venezuela as well. Indeed, to the extent that there is a connection between the facts underlying this action and the United States, the connection is much stronger in Philadelphia than New York. As noted above, POSEC performed significant amounts of procurement and engineering work under the EPC contracts in Philadelphia, while POSVEN engaged in extensive communications relating to the EPC Contracts with POSEC, as well as UEI and EOI, in Philadelphia. Under these circumstances, POSVEN's choice of a New York forum does not weigh heavily in the Court's determination.

*Trial Efficiency and the Interests of Justice:*

 Liberty Mutual argues that the Court should transfer venue to the East-

---

from 1790 through 1800. Accordingly, the Court is satisfied that both Philadelphia and New York are accessible and reputable locations.

ern District of Pennsylvania so that POS-VEN's complaint and Liberty Mutual's third-party complaint can be resolved in the same action. Otherwise, if the Court were to dismiss POSEC from the case, Liberty Mutual would be forced file a new action against POSEC in the Eastern District of Pennsylvania. Liberty Mutual argues that such an action would be an unnecessary drain on the resources of the parties and the judiciary and might ultimately need to be consolidated with the current action to avoid the risk of inconsistent results. This is a strong argument, as it is well established that the ability to implead a third-party in the proposed transferee forum and thereby resolve related claims in a single action weighs heavily in favor of transfer. *Halliwell,* 1999 WL 258260 at *1; *Ouding,* 1994 WL 381437 at *1; *Falconwood Fin. Corp. v. Griffin,* 838 F.Supp. 836, 841–42 (S.D.N.Y. 1993) (Leval, J.); *Vassallo,* 495 F.Supp. at 761; *Unico,* 323 F.Supp. at 896–97. Transfer under such circumstances substantially advances the interests of fairness, efficiency and judicial economy by preventing duplicative proceedings and thereby reducing the overall burden on the parties, non-party witnesses and the judicial system. *See, e.g., Falconwood,* 838 F.Supp. at 842 (" 'Interest of justice' encompasses the private and public economy of avoiding multiple cases on the same issues."); *Halliwell,* 1999 WL 258260 at *1.

POSVEN and POSEC, on the other hand, offer a variety of arguments to neutralize this consideration. POSVEN's arguments are as follows: 1) because discovery has been proceeding in this action for many months, transfer of venue would be inefficient; 2) POSVEN "understands" that the Eastern District of Pennsylvania has a longer backlog of cases than this Court (POSVEN Opp. at 8); 3) Liberty Mutual may have related claims against other non-parties, including EOI, UEI, and certain subcontractors, among others, so that Liberty Mutual has not established that *all* related claims can be litigated in this action; and 4) different witnesses and evidence may be relevant to the third-party complaint than will be required for POSVEN's claim against Liberty Mutual. POSEC argues 1) that Liberty Mutual, as a third-party plaintiff, must show a change in circumstance since the filing of its third-party complaint in order to justify a transfer, and 2) that transfer is not in the interests of justice because Liberty Mutual was not diligent in investigating whether POSEC was subject to personal jurisdiction in New York before filing its third-party complaint. Finally, both parties argue that regardless of the importance of allowing Liberty Mutual to implead PO-SEC in this action, the balance of the factors weigh in favor of denying the motion to transfer venue.

POSVEN's position is essentially that transfer of this action would be inefficient. It's numerous arguments on this point, however, are unconvincing. First, although discovery has already begun, the case management plan approved by the Court in this action holds depositions in abeyance and provides for the extension of discovery deadlines until after POSEC has appeared. Moreover, Liberty Mutual did not unfairly delay bringing its third-party complaint or seeking transfer. Thus, the circumstances here are distinguishable from those cases where courts have declined to transfer because of prejudicial delays by the party seeking transfer. *Cf., e.g., Lesser,* 2002 WL 1792039 at *7. Most importantly, because there is substantial overlap between the issues to be litigated between the three parties, providing for transfer so that these issues can be litigated in one action rather than two will result in substantial efficiency gains that will far

outweigh the burden of having to include POSEC in any discovery that has already occurred. The opportunity to avoid duplicative litigation also outweighs POSVEN's unsupported claim that there is a larger backlog of cases in the Eastern District of Pennsylvania, especially in light of the fact that, were this Court to dismiss the claim against POSEC and decline to transfer venue, Liberty Mutual would likely bring a separate action against POSEC in that very district and face the same delay.

The essential choice before the Court is whether to transfer the case to the Eastern District of Pennsylvania in order to allow the parties' rights and obligations under the EPC Contracts and the Performance Bond to be litigated in a single action or to dismiss the claim against PO-SEC, thus requiring Liberty Mutual to bring a separate action in Pennsylvania. Allowing the claims to be litigated in a single action is clearly the more efficient course and POSVEN's speculation that Liberty Mutual may have other causes of action relating to the Project or that Liberty Mutual's claims against POSEC may involve different witnesses and evidence does not change the analysis. The fact remains that Liberty Mutual's claims against POSEC are nonspeculative and they are based on the same EPC Contracts at the heart of POSVEN's claim against Liberty Mutual. While the evidence relevant to the parties' respective claims may not be identical, there will be substantial overlap. Enabling these related claims to proceed together is significantly more efficient than requiring that they be resolved in two separate actions.

■ POSEC's arguments are also unpersuasive. While courts in this District have, at times, looked for changed circumstances to justify transferring venue when transfer is requested by the plaintiff who originally chose the forum, *see Trehern v.*

*OMI Corp.*, 1999 WL 47303 at *3 (S.D.N.Y.1999); *Harem–Christensen Corp. v. M.S. Frigo Harmony*, 477 F.Supp. 694, 698 (S.D.N.Y.1979); *Harry Rich Corp. v. Curtiss–Wright Corp.*, 308 F.Supp. 1114, 1118 (S.D.N.Y.1969), a showing of changed circumstances is not required if transfer is in the interests of justice. *See Corke*, 572 F.2d at 80–81 (ordering transfer of venue requested by plaintiff because transfer was "in the interest of justice" but making no reference to any requirement that plaintiff show a change in circumstance); *Atlantic Mutual Ins.*, 2003 WL 21756414 at *2; *Anglo American Ins.*, 916 F.Supp. at 1329 ("The court may also grant a § 1404(a) motion by a plaintiff if the court believes that it would be in the interests of justice to do so, even if [plaintiff] can show no change in circumstances."); *Gipromer v. SS Tempo*, 487 F.Supp. 631, 632–33 (S.D.N.Y.1980); *see also Spar*, 956 F.2d at 394 (reviewing the district court's denial of plaintiff's motion to transfer venue under section 1406 and noting "we still believe that a district court should consider whether a transfer would be in the interest of justice and that we should afford the court's determination due deference"); *Fresca*, 595 F.Supp. at 1105. Because the Court finds that the ability to join POSEC in the transferee forum and avoid the burden and expense of duplicative actions is in the interest of justice, there is no need for Liberty Mutual to demonstrate a change in circumstances.

■ Nor is this a case where Liberty Mutual, as third-party plaintiff, has shown a lack of diligence by bringing its third-party complaint in a district where there is no personal jurisdiction over the defendant. If a plaintiff has ignored a clear jurisdictional bar in filing suit in a particular forum, dismissal rather than transfer is often warranted, especially if the plaintiff is engaging in forum shopping or some

other form of gamesmanship. *See Spar*, 956 F.2d at 394–95 (finding that to allow transfer where plaintiff had ample opportunity to bring action within the applicable statute of limitations period but failed to do so "would reward plaintiffs for their lack of diligence in choosing a proper forum and thus would not be in the interest of justice" and furthermore would allow plaintiffs an unfair opportunity to forum shop); *Feldman v. L & M Mowing, Inc.*, 1999 WL 284983 at *3 (E.D.N.Y.1999) ("[D]ismissal may be warranted where the plaintiff knowingly chooses the wrong forum or otherwise exhibits a lack of diligence."); *Pares v. Gordon*, 1992 WL 296437 at *2 (S.D.N.Y.1992) (dismissing case for lack of personal jurisdiction over defendant and denying motion to transfer where plaintiff's federal action was filed subsequent to dismissal of identical action for lack of personal jurisdiction in the Supreme Court of the State of New York and where, in spite of clear notice of the jurisdictional obstacle, plaintiff had failed to file in the proper forum prior to expiration of that forum's statute of limitations period). Liberty Mutual's third-party complaint and subsequent motion for transfer, however, do not raise any of these concerns. Although its argument for subjecting POSEC to personal jurisdiction in New York is ultimately not successful, it is also not incredible, nor does it ignore the type of clear jurisdictional bar that would call into

question Liberty Mutual's motives or diligence.[6]

The ability to obtain personal jurisdiction over POSEC in the Eastern District of Pennsylvania, therefore, remains an important consideration for the Court in determining whether to transfer venue. In contrast, no significant factors favor retaining this action in the Southern District of New York. POSVEN is not a resident of New York, none of operative facts occurred in New York, and the convenience of the parties and witnesses do not favor New York. Essentially, no significant connection exists between the instant action and this District, other than the EPC Contracts' choice of law provisions and the fact that the case was filed here.

These minimal considerations are far outweighed by the prospect of litigating Liberty Mutual's claims against POSEC in the same action as POSVEN's claims against Liberty Mutual. Liberty Mutual's charge that POSEC is jointly and severally liable for the same breaches of the EPC Contracts for which POSVEN now seeks recovery from Liberty Mutual will obviously involve substantial overlapping evidence and allowing these claims to proceed together rather than separately will save the judicial system and the parties significant resources. The Supreme Court has instructed the lower courts that the purpose of section 1404(a) is "to prevent the waste 'of time, energy and money' and 'to protect litigants, witnesses and the public against

6. POSEC emphasizes a factual discrepancy between Liberty Mutual's third-party complaint, which alleged that POSEC representatives attended various meetings (*plural*) in New York relating to the Project and the EPC Contracts, and the argument in Liberty Mutual's opposition to POSEC's motion to dismiss, which rests largely on POSEC's attending a *single* meeting in New York. This discrepancy is of little consequence here, especially in light of the fact that, in its motion to dismiss, POSEC initially denied attending *any* meet-

ings in New York relating to the Project. It was only after Liberty Mutual submitted the Declaration of Robert S. Marrone and the minutes of the May 16 meeting in support of its opposition to POSEC's motion, which made clear that POSEC indeed had a representative at the meeting in New York, that POSEC changed its position. As it appears both sides had some difficulty ascertaining the relevant jurisdictional facts, the Court declines to penalize either party for their respective miscalculations.

unnecessary inconvenience and expense.'" *Van Dusen v. Barrack*, 376 U.S. 612, 616, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964) (quoting *Continental Grain Co. v. Barge FBL–585*, 364 U.S. 19, 26, 27, 80 S.Ct. 1470, 4 L.Ed.2d 1540 (1960)); *see also Falconwood*, 838 F.Supp. at 843 (transferring case to Tennessee to enable the joinder of a third party who was not subject to personal jurisdiction in New York even though the contract at issue between plaintiff and defendant contained a New York forum selection clause).[7] Given the importance of these considerations, the Court finds that transfer is appropriate based on the convenience of the parties and witnesses and the interests of justice.

## III. CONCLUSION

For the foregoing reasons, third-party defendant POSEC's motion to dismiss is DENIED and defendant Liberty Mutual's motion to transfer is GRANTED. The Clerk of the Court is directed to transfer this case to the United States District Court for the Eastern District of Pennsylvania.

**SO ORDERED.**

---

7. Transfer here also comports with the purpose behind Rule 14 of the Federal Rules of Civil Procedure, which permits defendants to implead third parties: "to avoid two actions which should be tried together to save the time and cost of a reduplication of evidence, to obtain consistent results from identical or similar evidence, and to do away with the serious handicap to a defendant of a time difference between a judgment against him and a judgment in his favor against the third-party defendant." *Dery v. Wyer*, 265 F.2d 804, 806–07 (2d. Cir.1959) (internal quotations omitted).